[Civ. No. 4434. Second Appellate District, Division One.—July 10, 1926.]

## R. H. GIBSON, Appellant, v. WILLIAM CRUICKSHANK, Respondent.

[1] SALES—PURCHASE OF TRACTOR—PAYMENT BY CHECK—BREACH OF WARRANTY—RESCISSION—ACTION UPON CHECK—PAROL EVIDENCE.—Where, under an oral contract for the purchase and sale of a tractor entered into between the agent of the seller and the buyer, the tractor was delivered to the latter on condition and upon the agent's warranty that it would haul a grain separator and furnish power to the separator in the threshing of grain, and a check and two promissory notes given and accepted in payment of the purchase price were the only written evidence of the transaction offered in an action brought by the assignee of the seller on said check, payment of which had been stopped, and in which action the buyer claimed a rescission of the transaction because of a breach of the warranty and condition, parol evidence of said warranty and condition was properly received, said check and notes being not a part of the oral contract but only of its performance.

[2] ID.—STATEMENTS INDUCING PURCHASE—WARRANTY—AGENCY.—The statements made by the seller's agent to induce the buyer to make the agreement of purchase that "said tractor could and would haul defendant's grain separator to, upon, and from any field where defendant might desire to take same for the purpose of threshing grain, and would furnish power to operate said separator in threshing grain," were in the nature of warranties in the contract itself rather than representations by way of inducement to make the contract, and since these warranties were in effect warranties of the quality of the article sold, they were warranties which the seller's agent was authorized to make under section 2323 of the Civil Code.

[3] ID.—TRIAL OF TRACTOR—CARE AND SKILL IN OPERATING—FINDINGS —EVIDENCE—WARRANTY—RESCISSION.—In such action, although in some respects conflicting, the evidence was sufficient to sustain the finding to the effect that in trying the tractor and attempting to operate it for his purposes defendant exercised the proper care and skill and that it did not work so as to comply with the warranty or conditions upon which he agreed

1.  See 22 Cal. Jur. 977.
2.  See 22 Cal. Jur. 1001.
3.  See 22 Cal. Jur. 1012.

to buy it; and it appearing that the warranties were intended by the parties to operate as a condition under section 1786 of the Civil Code, defendant was entitled to rescind the executed sale.

[4] ID.—RESCISSION—LACHES—WAIVER.—In such action, the buyer's right of rescission was not waived by lack of diligence and by use of the tractor after knowledge of the alleged defects, where such use was not extended beyond the limits of a reasonable test; nor did the defendant's delay before formally attempting to complete the act of rescission (a delay of two months after a conversation between defendant and plaintiff's agent) necessarily constitute a waiver of the right to rescind the sale, where in such conversation defendant informed the agent that the tractor was not any good and would not do the work and the agent replied that if it was not any good he did not want defendant to keep it and that he would come after it.

[5] ID.—DELIVERY OF NOTES — PAYMENT — JUDGMENT — EVIDENCE.—In such action that part of the judgment in favor of defendant which allows recovery against plaintiff of an amount equal to the face value of the notes given in payment for the tractor is unsupported, where (so far as appears) such notes, which became due before the cross-complaint was filed, remained in the possession of plaintiff, and there is no evidence that defendant will be compelled, or that he can be compelled, to pay them.

---

(1) 22 C. J., p. 1258, n. 84, 85.   (2) 2 C. J., p. 602, n. 64 New. (3) 35 Cyc., p. 138, n. 43, p. 465, n. 92.   (4) 35 Cyc., p. 142, n. 76, p. 152, n. 47, p. 154, n. 57.   (5) 35 Cyc., p. 579, n. 29 New.

APPEAL from a judgment of the Superior Court of Riverside County. G. R. Freeman, Judge. Modified and affirmed.

The facts are stated in the opinion of the court.

Chapman & Chapman for Appellant.

Thomas T. Porteous for Respondent.

CONREY, P. J.—It appears from the amended complaint, which was filed by one J. S. Gibson, that a check for $725 was made and delivered on the twenty-fifth day of June, 1920, as part payment to plaintiff on account of one Samson sieve-grip tractor, sold and delivered by the plaintiff to the defendant for the agreed price of $1,450. It further appears from the amended complaint that in addition to the check, the defendant at the same time executed and delivered to

plaintiff two promissory notes, also dated June 25, 1920, in favor of the plaintiff, each note in the principal sum of $362.50, with interest, which notes were payable in three months and six months, respectively, after date; that said notes were accepted by plaintiff to cover the balance of said purchase price. It was further alleged that on June 29, 1920, the defendant stopped payment on said check, and has refused to pay the amount therein specified as set forth in said check or at all, and that the said sum covered by said check remains due, owing and unpaid from defendant to plaintiff. Plaintiff's action is on the check alone and not on the notes.

By his amended answer to the amended complaint defendant denied the sale or delivery by the plaintiff J. S. Gibson of said tractor, but alleged that on June 25, 1920, he agreed to purchase from one O. C. Hathaway a tractor (giving the same discription as in the amended complaint), for the sum of $1,450, "payable $725.00 on delivery of said tractor, and two notes for $362.50 each, payable three and six months after date, respectively, upon the conditions hereinafter set forth." The amended answer then set forth certain representations and warranties made by Hathaway to defendant which defendant believed, and so believing and relying thereon, entered into said contract. The amended answer alleged falsity of the representations, and breaches of warranty; also that defendant stopped payment on said check and gave notice of rescission, etc.

As a separate defense the defendant admitted that he agreed to purchase the tractor from the plaintiff, but alleged that the agreement was made through plaintiff's agent, Hathaway, and upon the like representations and warranties as stated in the first defense, it being now in the second defense alleged that said representations and warranties were made through plaintiff's agent, Hathaway.

With his answer the defendant filed a cross-complaint, based upon the same transactions hereinabove mentioned, and sought to recover the sum of $160 expended by the defendant in attempting to work and operate the tractor, and also demanded judgment that the check and notes be delivered up to defendant for cancellation, or judgment for the amount thereof in case delivery could not be had. Plaintiff's demurrer to the answer and his demurrer to the cross-

complaint being overruled, the plaintiff filed an answer to the cross-complaint, thereby completing the issues on which the case was tried.

Thereafter, it being made to appear that J. S. Gibson had transferred to R. H. Gibson all of J. S. Gibson's rights in and to the plaintiff's cause of action, the present appellant, R. H. Gibson, was substituted as plaintiff. It was after such substitution that the case was tried by the court and judgment rendered to the effect that plaintiff take nothing, and that the defendant recover from plaintiff possession of said promissory notes, or, in case delivery thereof cannot be made, that defendant recover from plaintiff the sum of $725, with interest, etc. From this judgment the plaintiff appeals.

In its findings the court found that at the stated time defendant agreed to purchase from J. S. Gibson through O. C. Hathaway, his agent, the described tractor for the agreed price of $1,450, payable $725 upon delivery of the tractor, and the balance by the promissory notes; and that the check and notes were delivered. The court then found as follows:

"III. That for the purpose of inducing the defendant to enter into said agreement to purchase said tractor the said J. S. Gibson by his agent O. C. Hathaway represented and warranted to defendant that said tractor could and would haul defendant's grain separator to, upon and from any field where defendant might desire to take same for the purpose of threshing grain, and would furnish power to operate said separator in threshing grain; that the defendant believed said representations and warranty and so believing them to be true and in reliance upon them agreed to purchase said tractor as aforesaid, and it was agreed by said J. S. Gibson that if said tractor did not and could not do the work it was represented and warranted it could do, as above set forth, defendant would not have to carry out said agreement of purchase.

"IV. That said representations and warranty were and are each and all false and untrue. That after the delivery of said tractor to the defendant he made various trials of said tractor in attempting to use the same in hauling his said separator; that in all of said trials said tractor was operated with proper care and skill at all times but it was

not possible to make the same work or to develop power to haul said separator, and said tractor was not and never was reasonably or at all fit for the said purpose of hauling said separator or of operating the same in threshing grain, and said tractor did not at any time work so as to comply with the warranty or conditions upon which said defendant agreed to buy same.

"V. That on the 29th day of June, 1920, defendant stopped payment on said check for $725.00 and it has not been paid, and on or about the 5th day of July, 1920, defendant notified the plaintiff through his agent O. C. Hathaway that said tractor could not do the work it was represented it would do and that it did not meet the conditions upon which it was sold, and that he rescinded said agreement of purchase and tendered said tractor back to the plaintiff and demanded of him the return of said promissory notes and check, but to return same plaintiff refused."

Appellant contends that if the findings be understood as affirming that there was not a completed sale of the tractor, they are contrary to the evidence. The tractor was delivered. The check and the notes contained recitals that they were given by way of "payment" on the tractor. And the findings do indicate a completed sale, down to the point where they say that "it was agreed by said J. S. Gibson that if said tractor did not and could not do the work it was represented and warranted to do, as above set forth, defendant would not have to carry out said agreement of purchase."

[1] There was no written evidence other than the check and the notes. Appellant contends that "the admission of parol evidence, tending to establish parol warranties and adding conditions to the written promise to pay, in the form of the check and notes, was reversible error." But if we accept appellant's theory, which appears to be correct, that the check and the notes were given and taken in payment of the purchase price, then they were parts, not of the contract, but only of its performance. The contract itself was made altogether by oral statements. Therefore there was no error in receiving testimony concerning those statements.

Now, as to representations made by the seller to induce the buyer to make the agreement of purchase, these were "that said tractor could and would haul defendant's grain separator to, upon and from any field where defendant might desire to take same for the purpose of threshing grain, and would furnish power to operate said separator in threshing grain."

[2] But these statements, in the circumstances under which they were made, were in the nature of warranties in the contract itself rather than representations by way of inducement to make the contract, and since these warranties were in effect warranties of the quality of the article sold, they were warranties which the agent Hathaway was authorized to make. "An authority to sell personal property includes authority to warrant the title of the principal and the quality and quantity of the property." (Civ. Code, sec. 2323.) Comparing the facts as shown by the evidence, with the article on warranty (sec. 1763 et seq.) in the Civil Code, it appears that the transaction carried with it no implied warranty. The defense herein therefore must rest on the express terms of the contract as made between Hathaway and the defendant.

On June 25, 1920, at the time when this contract was made, the defendant was engaged in threshing grain for one McMahon on land of McMahon at West Riverside, and was using a Fordson tractor. Defendant desired to obtain a tractor of greater power than the Fordson. On his invitation, Hathaway brought the Samson tractor to the McMahon place. By conversations between defendant and Hathaway it was made clear that the tractor would be used to operate the thresher and also to haul the thresher to other places where it would be used. The Samson tractor was tested for a short time by using it to complete the McMahon job, and they then attempted to use the Samson tractor to pull the thresher out to the road. This it did not do satisfactorily, but this was attributed to the fact that at that time the "road bands," which were provided for use on the tractor wheels when being used on the highway, had not been removed, so they "hitched on the Fordson" and brought the machinery out to the road. It was there that the sale was closed. According to defendant's testimony,

he told Hathaway that he would take the tractor "on condition that it would pull the thresher wherever we wanted to go and operate it." Hathaway replied that "it would pull that any place we wanted to go and thresh." Defendant then said, "On that condition I will pay you for the tractor." Thereupon defendant delivered the check and the two notes.

This brings us to the further question of breach of warranty or failure of the condition on which the sale was made. Defendant's next threshing job at that time was to be on the property of Scofield, about one mile from the McMahon place. The Samson tractor pulled the thresher over the highway, and three or four hundred yards along a road leading up to the Scofield place. There the tractor "went dead" on soft ground, and it became necessary to get a team of horses to take the thresher to the Scofield place. On the next day, Sunday, Hathaway's son came out in response to a complaint from the defendant, and they began threshing grain, obtaining their power from the Samson tractor. After about thirty minutes the engine stopped and would not go. They were not able to get it started again that day. The next day, Monday, defendant and his son came and after some difficulty and delay the machine started and threshed for about two hours when it stopped again. The job was finished by using the Fordson tractor. Defendant then started to take the Samson tractor back to Riverside, but when he stopped to put on the road bands he could not get it to start again, and it was left on the roadside until July 4th, an interval of six days. On July 4th defendant "got it started and got it as far as my place when it stopped." He was taking the tractor to Hathaway's when it stopped. Hathaway lived about three hundred feet beyond defendant's home place. Defendant further testified that on or about July 11th he told Hathaway that the tractor wasn't any good and would not do the work. Hathaway replied that "if it wasn't any good, he didn't want me to keep it. . . . He said he would come after it. . . ." Apparently no further effort was made to use the tractor, and in September defendant took it to Hathaway's premises and left it there. On September 17th formal notice of rescission was given.

[3] While the evidence on the point may in some respects be conflicting, it is nevertheless sufficient to sustain the court's finding that in defendant's trials of said tractor and his attempts to use the same it was operated by him with proper care and skill, and that the tractor was not reasonably fit for the stated purposes for which it was intended to use it, and did not work "so as to comply with the warranty or conditions upon which said defendant agreed to buy the same." And since it appears that the warranties were "intended by the parties to operate as a condition" (Civ. Code, sec. 1786), the buyer was entitled to rescind the executed sale. (*Pepper* v. *Vedova*, 26 Cal. App. 406 [147 Pac. 105]; *Luitweiler etc. Co.* v. *Ukiah etc. Co.*, 16 Cal. App. 198, 205 [116 Pac. 707].)

[4] Appellant suggests the further point that defendant's right of rescission was waived by lack of diligence and by use of the apparatus after knowledge of the alleged defects. We think, however, that the use was not extended beyond the limits of a reasonable test. And in view of the conversation of July 11th, above stated, the delay before attempting to formally complete the act of rescission—a delay of two months—did not necessarily constitute waiver of the right to rescind the sale.

[5] That part of the judgment which allows recovery against appellant of an amount equal to the face value of the notes is without support in the pleadings or findings. So far as appears these notes (which became due before the cross-complaint was filed) remained in possession of appellant. There is no evidence that respondent will be compelled, or that he can be compelled, to pay them.

It is ordered that the judgment be modified by striking therefrom the words "and in case a delivery of said property cannot be had that defendant do have and recover of and from the plaintiff R. H. Gibson the sum of $725.00 with interest thereon at the rate of seven per cent per annum from the 25th day of June, 1920, until paid." As thus modified the judgment is affirmed.

Houser, J., and York, J., concurred.