[Civ. No. 6162. Third Appellate District.—June 24, 1939.]

DRUMAR MINING COMPANY, LTD. (a Corporation), Appellant, v. MORRIS RAVINE MINING COMPANY (a Corporation), Respondent.

Fred A. Watkins for Appellant.

Anthony, Harwood & Rogers and H. D. Gregory for Respondent.

ALLEN, J., *pro tem.*—On the 10th day of August 1936, plaintiff sold to defendant certain mining machinery, being what is called a Huelsdonk Concentrating Gold Washing Machine, and appliances therefor, on a written conditional sales agreement, the purchase price being $1750,

payable in monthly instalments. In the negotiations leading to the contract plaintiff was represented by one V. Dale Martin, its secretary-treasurer and general manager, who was also consulting engineer for defendant corporation in its mining operations. Defendant was represented by J. M. Sharpe, its president. The machinery involved had been used by plaintiff in its mining operations for more than one year before being sold to defendant and was used or second-hand machinery at the time of the sale to defendant. Plaintiff corporation was not a manufacturer or dealer in mining machinery, and the machinery was sold to defendant either because plaintiff could not or did not wish to use the same any longer. The defendant purchased the machinery for use in its mining operation, and for the particular use and purpose of washing gold from gravel in order to save the gold. Mr. Sharpe had knowledge that the machinery had been used by plaintiff in its mining operations and had seen the same operating on plaintiff's property. The court found that defendant made known to plaintiff, and that plaintiff had knowledge of the particular purpose for which the goods were required by defendant, and that defendant, in purchasing such machinery, relied on the plaintiff's skill and judgment. The court also found that the machinery was not reasonably fit for the particular purpose for which it was required. There is ample evidence to sustain these findings. Defendant failed to make the payments as required by the contract, and plaintiff brought suit to recover overdue payments, and defendant attempted to rescind the contract, and denied liability thereunder, and filed a cross-complaint for damages. The court in giving judgment for the defendant, found there was no express warranty of fitness, and as the agreement contains no such warranty, with this finding, we agree. The court based its judgment on the finding that there was an implied warranty of fitness and this is the principal question for determination on this appeal.

■ The point urged with greatest force by counsel for appellant in their brief and argument, is: That the goods supplied were sold under a trade name, to wit: "A Huelsdonk Concentrator", and therefore there is no implied warranty of fitness for any particular purpose. Supporting this contention plaintiff relies on subdivision 4 of section 1735 of the Civil Code, which reads:

"In the case of a contract to sell, or a sale of a specified article under its patent or other trade name, there is no implied warranty as to its fitness for any particular purpose."

Subdivision (1) of the same section reads:

"Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that he relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose."

This section of the code is an enactment of that identical part of the Uniform Sales Act which has been adopted by most states. In applying this section, three important questions arise:

Firstly: What is meant by a "patent" or "trade name"?

Secondly: Was the selection of the article made by the buyer because of the well-known qualities existing in an article of that trade name? and:

Thirdly: Was the article purchased with the seller's knowledge of the purpose for which the purchaser intended it to be used, and did the buyer rely on the seller's known skill and judgment to furnish an article fit for that purpose, and was the name used merely to identify the article? In the first place, if the buyer received the article selected by him, by its trade name, and it had the qualities that the trade name imported, there would be no implied warranty that it was fit for his purpose, although the seller knew it was to be used for that purpose and expressed an opinion it would fulfill that purpose. In the second place, if the name was used merely to identify the article, and the seller, knowing the buyer's purpose, selected the article, and the buyer relied on seller's skill and judgment, there would be an implied warranty of fitness for buyer's purpose. These seem to be the general rules in all jurisdictions, and is not out of harmony with the cases cited by appellant. In 59 A. L. R., page 1180, the rule is stated:

"The raising of an implied warranty of fitness depends upon whether the buyer informed the seller of the circumstances and conditions which necessitated his purchase of a certain general character of article, and left it to the *seller to select* the particular kind and quality of article suitable for the buyer's use. And this is true without reference to whether the rules of common law or the Uniform

Sales Act apply. . . . *The major question in determining
the existence of an implied warranty of fitness for a particular
purpose, is the reliance by the buyer upon the skill
and judgment of the seller to select an article suitable for
his needs, and the question as to whether the article was
described by its trade name or trade mark, is not conclusive,
if the other conditions exist which would raise an implied
warranty of this character."*

In *Barrett Co.* v. *Panther Rubber Mfg. Co.*, 24 Fed. (2d)
329, the question of what was meant by a trade name as
used in subdivision 4 of this section, was involved, and
the court said:

"We think the rule applies only to goods known in the
market and among those familiar with that kind of trade
by that description."

In *O. C. Barber Mining & Fertilizing Co.* v. *Brown Hoisting
Machinery Co.*, 258 Fed. 1, it is stated:

"It was for the jury to decide from the evidence whether
the article was sold under a patent or trade name, or whether
the buyer relied upon the seller's skill and judgment."

In *Beggs* v. *James Hanly Brewing Co.*, 27 R. I. 385 [62
Atl. 373, 114 Am. St. Rep. 44], the holding was against an
implied warranty, the article being sold under trade name,
the holding being on the ground, "that the apparatus contracted
for was well known, and in use in other places in
the trade". In 59 A. L. R., page 1187, the rule is stated:

"Where the selection is actually made by the buyer, subdivision
4 applies, even though the seller knew that the
buyer was purchasing the article for some particular use,
and induced the contract by trade talk with reference to
the general good qualities of the article. If, however, the
seller goes further than this, and recommends the article
as particularly fit for the buyer's use, this would seem to
amount to selection by the seller."

The following cases bear out the rule as above stated,
that where the selection is made by the seller for the particular
and known use of the buyer, and the buyer relies
on the skill and judgment of the seller, there is an implied
warranty of fitness:

(*Sachter* v. *Gulf Ref. Co.*, 203 N. Y. Supp. 769; *Ireland*
v. *Louis K. Leggett Co.*, 243 Mass. 243 [137 N. E. 371];
*Sperry Flour Co.* v. *De Moss*, 141 Or. 440 [18 Pac. (2d)

242, 90 A. L. R. 406]; and numerous cases in notes in 59 A. L. R., p. 1180, and 90 A. L. R. 410.) Appellant cites:

*Atteaux & Co.* v. *Pancreon Mfg. Co.*, 22 Fed. (2d) 749; *Davis Calyx Drill Co.* v. *Mallory,* 137 Fed. 332 [69 L. R. A. 973]; *Matteson* v. *Lagrace,* 36 R. I. 223 [89 Atl. 713]; and many other cases in support of his contention, but all are in harmony with the above rule. The circumstances and facts of each case control the decisions. The rule is, if the selection of an article, by a patent or trade name, is made by the buyer, there is no implied warranty, but if the seller knows the uses and purposes of the buyer, and selects the particular article to do the buyer's work, and the buyer relies upon the skill and judgment of the seller, there is an implied warranty. The evidence in this case discloses that plaintiff's agent had full knowledge of defendant's requirement, went to defendant's agent, and prevailed upon him to buy the machine, stating: "It is the thing you want for your job." And the defendant relied upon plaintiff's agent's skill and judgment, and no importance was given by either party to the name "Huelsdonk". It was merely used to identify the article. There is no evidence that the name was either patented or well known in the trade. Therefore, under the circumstances, we hold that the sale was not made under a patent or trade name, but the selection was made by the seller, knowing buyer's purpose, and relying on buyer's skill and judgment, the use of the name "Huelsdonk" did not prevent the arising of an implied warranty of fitness.

The next point made by appellant is that the article sold was second-hand or used machinery, and that there is no implied warranty of fitness in the sale of second-hand or used machinery. Appellant does not urge this point with any great force, but it is our view it is the most serious question presented. There is no question but that the machinery was known by the purchaser to be used or second-hand machinery and that defendant's agent had ample opportunity to see the same. The doctrine has been announced in many cases, and the general rule seems to be that: "There is no implied warranty as to quality in the sale of second-hand or used machinery." (24 R. C. L. 170; *Durbin* v. *Denham,* 106 Or. 34 [210 Pac. 165, 29 A. L. R. 1227]; *Tebbets & Pleasant, Inc.,* v. *Town of Fairfax,* 145 Okl. 211 [292 Pac. 9]; *Lamb* v. *Otto,* 51 Cal. App. 433 [197 Pac. 147].) The question here to be determined is: Does the general rule that

there is no implied warranty prevail in all cases when the sale of known second-hand machinery is made? The vast volume of business done in second-hand machinery makes it important that any decision on this point be well considered, and that the general principles as applied to the facts in the particular case must be kept constantly in mind. If, as the evidence and facts as found by the court, showed in this case, a seller having an article of machinery used by him, the capacity and quality of which is thoroughly familiar, and being also thoroughly familiar with the needs, use and requirements of the buyer, prevails upon a buyer to purchase this machinery, the buyer knowing that the seller knows the machinery, and knows the buyer's needs, the machinery being of such character that only operative tests and not mere inspection could determine its fitness, and the buyer knowing that the seller has made these tests, and relying solely on such seller's skill or judgment, makes the purchase, will the fact that the machinery was second-hand preclude an implied warranty of fitness?

There is nothing in the Uniform Sales Act declaring there is no implied warranty in the sale of second-hand goods. Section 1735 of the Civil Code declares there is no implied warranty or condition as to the quality of fitness for any particular purpose, of goods supplied under a contract to sell, or a sale, except (then this general statement is followed by several exceptions). It would seem that the legislature intended this section to apply to all sales of goods, whether new or second-hand. In subdivision 1 of this section, this language is used:

"Where the buyer makes known to the seller the particular purpose for which the goods are required, . . . and it appears that the buyer relies on the seller's skill or judgment, . . . there is an implied warranty of fitness."

In the case of *Lamb* v. *Otto, supra,* and in all other cases cited, the circumstances were very much different than the case at bar. In *Durbin* v. *Denham,* 106 Or. 39, *supra,* a case dealing with the sale of second-hand machinery, it was stated:

"According to the principles of deciding cases, and upon clear grounds of justice, the fundamental inquiry must always be whether, under the circumstances of the particular case, the buyer had the right to rely, and necessarily relied on the judgment of the seller, and not upon his own. In ordinary sales the buyer has an opportunity of inspecting

the article sold; and the seller not being the maker, and therefore having no special or technical knowledge of the mode in which it was made, the parties stand upon ground of substantial equality.''

Applying this rule to the case at bar, it is apparent that only an operative test could determine the fitness of the machine. An inspection without an operative test would determine nothing as to its fitness. The seller, to the buyer's knowledge, had made this test, and the seller well knew the purpose and requirements of the buyer, and the buyer relied, and had a right to rely on the seller's skill and judgment. In such a case, it would appear that substantial justice requires the raising of an implied warranty. In 29 A. L. R., at page 1231, it is stated:

''The rule, *caveat emptor,* according to the later trend of the authority, does not usually operate to preclude the implication of a warranty of some character from the sale of the personalty, especially where there was *no opportunity for an efficient inspection,* or where *the buyer relied upon the skill and judgment of the seller.*''

Therefore, under the circumstances of the case at bar, the fact that the machinery was second-hand, does not preclude the implication of a warranty of fitness. Both parties to this action are corporations dealing through their agents. This fact does not alter the situation. That artificial person we call a corporation may seem to be a senseless robot without either skill or judgment, but when it enters into dealings with human beings, the skill and judgment of the human beings that control it must be imputed to it. In the words of Judge Hardy: ''It deals man to man.'' Therefore, as there was no opportunity for efficient inspection without a test, and as the buyer had to rely on seller's skill and judgment, we hold the fact the machinery had been used by the seller does not preclude the implied warranty of fitness.

The next point made by appellant is that the defendant was guilty of laches and lost its right to rescind the contract. It is no doubt the law that by unreasonable delay, after being aware of the facts giving a party a right to rescind, he loses his right, but the right is not forfeited by making an honest attempt to make a machine function properly, and under circumstances in which the article is durable or the defect obscure, the right to rescind may be exercised

after a reasonable lapse of time. In this case, while the machine was purchased on August 10, 1936, the defendant had to install the same, and had to fill its bins with ore in order to put the machine to the test. The test began in January, 1937, and extended through January and February. The machine was not used after March 1, 1937, and notice of rescission was given on March 18th. We do not believe that an unreasonable length of time was consumed in this test, or in giving the notice after the test proved unsatisfactory. (*Gibson* v. *Cruickshank,* 78 Cal. App. 652 [248 Pac. 732]; *Nile* v. *Baida,* 202 Cal. 98 [259 Pac. 433]; *Lichtentheler* v. *Sampson Iron Works,* 32 Cal. App. 220 [162 Pac. 441]; *Brandenberg* v. *Samuel Stores,* 211 Iowa, 1321 [235 N. W. 741, 77 A. L. R. 1161], and notes.)

The judgment appealed from is affirmed.

Pullen, P. J., and Thompson, J., concurred.