JOHNSON, Respondent, v. WORTHINGTON CREAMERY & PRODUCE CO., Appellant

(299 N. W. 69.)

(File No. 8447.  Opinion filed June 30, 1941.)

118

**T. R. Johnson,** of Sioux Falls, and **Flynn & Mork,** of Worthington, Minn., for Appellant.

**Rice & Rice,** of Flandreau, for Respondent.

RUDOLPH, J. Plaintiff in this action seeks to recover damages for an alleged breach of warranty. The plaintiff was an extensive raiser of poultry on a farm located in Moody County. Sometime before September 30, 1939, plaintiff's flock consisted of approximately two thousand leghorn pullets. A representative of the defendant company, one Hemerich, called upon plaintiff and advised him that the defendant was interested in obtaining eggs from leghorn pullets crossed with black Australorpe roosters, and that, if plaintiff would purchase Australorpe roosters, the defendant company would pay him a premium for all eggs produced. Plaintiff testified that Hemerich represented that defendant had black Australorpe roosters which it would sell to the plaintiff for one dollar each, and that the purchase price of the roosters could await the sale of eggs by plaintiff to defendant. According to plaintiff's evidence, Hemerich warranted these roosters to be in a strong, healthy, vigorous condition and good roosters. Some days following this visit of Hemerich, plaintiff notified him that he had decided to purchase the roosters. Plaintiff testified that he would not have purchased the roosters had they not been warranted by Hemerich. On September 30, 1939, Hemerich delivered

to plaintiff one hundred twenty-six black Australorpe roosters, which plaintiff at first did not house with his main flock, but housed them with some capons. Plaintiff testified that the first night the roosters were at his place, he noticed that a number of them had a "rattle in their throats." Plaintiff was of the opinion that they had a cold and within a week treated them by a spraying method. On October 27th Mr. Hemerich was again on the farm for the purpose of testing the pullets, and at this time he was advised by plaintiff that the roosters had colds, and that it was spreading to the pullets. Hemerich advised plaintiff to put some kerosene in the water, and said it would be all right to turn the roosters into the large flock of pullets, which plaintiff did at that time. About two weeks later the chickens on the farm began to die. According to plaintiff's testimony, "The roosters were about ten times worse than the hens." Plaintiff contacted the defendant company and Mr. Hemerich came out to the farm again and advised certain treatment with regard to feed and drinking water. A few days thereafter the plaintiff took some of the dead chickens to a veterinarian in Flandreau, who performed a post mortem examination and advised plaintiff that the chickens had a disease known as diphtheritic roup. Plaintiff then took some of the dead chickens to defendant's offices at Worthington, Minnesota, where he was also advised that these chickens had died from diphtheritic roup. Thereafter the chickens became worse and the defendant sent a representative to plaintiff's farm, and this representative advised that the heads of the remaining chickens should be dipped in kerosene. Plaintiff followed these instructions and within a day or two thereafter the chickens began to die by the hundreds, and continued to die until only four hundred ninety-five pullets and thirty-eight roosters remained. This statement of facts is sufficient for our present purpose. Other facts will be disclosed in discussing the contentions of the parties. After a trial, the jury returned a verdict for plaintiff upon which the trial court entered judgment. Defendant has appealed.

■ Appellant first contends that in the sale of the roosters Hemerich was simply acting as a broker or agent

for one DeBoer and not as an agent of the defendant. This issue was submitted to the jury. In our opinion, the evidence is ample to support a finding in respondent's favor on this issue.

■ Appellant next contends that Hemerich was without authority to warrant the quality of the roosters. In the light of the verdict of the jury, we think it clear under the evidence that it was Hemerich's business to sell on behalf of the defendant this certain type of rooster to the owners of leghorn pullets. SDC 3.0209, provides: "Authority * * * to sell personal property includes authority to warrant * * * the quality * * * of the property."

Under this statutory provision the authority of Hemerich to sell these roosters on behalf of defendant included the authority to warrant them as being healthy and free from disease. Construing identical statutes, see Canham v. Plano Manufacturing Co., 3 N. D. 229, 55 N. W. 583; Cysewski v. Fried, 24 N. D. 152, 139 N. W. 104, Ann. Cas. 1915C, 579; Gibson v. Cruickshank, 78 Cal. App. 652, 248 P. 732.

■ The contention most seriously urged by appellant is that the evidence will not support the verdict insofar as the evidence relates to the issue of the roosters having the disease of diphtheritic roup at the time they were delivered to plaintiff. Much expert testimony on the nature of this disease was introduced in evidence. This evidence was, to some extent, conflicting, but under this conflicting evidence it was within the province of the jury to find that at the outset of the disease, or in a chronic case, especially if it were in a mild form, there would be very little or any external evidence of its presence. There would, perhaps, be noticed difficulty in breathing and there would be some unnatural noise emanating from the throat of the fowl. We are of the opinion that it was within the province of the jury to find from the testimony of the plaintiff as to the condition of the roosters at the time they were delivered and the days immediately following, that the symptoms of diphtheritic roup were then in evidence. However, appellant contends that the time element refutes any finding that the

roosters had the disease at the time they were delivered to plaintiff. Medical experts testified that the incubative period of the disease is from four to fifteen days, and the duration of the disease is from two to three days to three weeks. This testimony, as we read the record, related to the acute form of the disease. There was introduced in evidence a statement from a United States Department of Agriculture bulletin wherein it is stated that a chronic form of the disease may continue for several months. The jury could have found that these roosters were suffering from the chronic form of the disease, and that the disease was communicated to the main flock after the roosters were turned into and housed with the flock following October 27th. It appears from the evidence that within two weeks following October 27th the disease in the flock was pronounced.

■ Appellant contends that any such theory or finding by the jury, as above indicated, cannot be reconciled with the fact that plaintiff testified that on December 4th he sold as healthy birds the capons with which the roosters were originally housed. The evidence is such, however, that the jury could find that the disease was evidenced to some extent among the capons but not in a virulent form. It appears that these capons were remnants of a large number of capons which had suffered from a severe chicken disease some time before, which had also caused a large number of deaths among the flock of capons. Apparently these capons were the ones able to resist that particular disease, and it is possible under the evidence that these remaining capons were hardy enough to resist this disease of diphtheritic roup in a virulent form. The evidence of the experts discloses that the natural resistance of the particular fowl determines the virulence of the disease. In any event, it is undisputed that the disease was present in the flock, that the capons were exposed thereto and, whether the disease was communicated to the flock by the roosters, or whether it was communicated by some other means, cannot be determined by the fact that the capons failed to contract it in a virulent form.

■ Appellant also contends that the record conclusive-

ly establishes that the DeBoer flock, from which these roosters came, was free from the disease, and that it would follow that the roosters when sold to the defendant were not contaminated. Mr. DeBoer testified that in the month of November, 1939, his flock was suffering from a disease he diagnosed as a cold. However, the symptoms which he described were similar to those described by the veterinarians as being symptoms of diphtheritic roup. Also the symptoms shown by the roosters when delivered to the plaintiff were those of diphtheritic roup, at least it was within the province of the jury to so find.

Sometime during January, 1940, Plaintiff went to the DeBoer farm at Hull, Iowa, and there purchased a black Australorpe rooster from the flock of Mr. DeBoer. Plaintiff took this rooster, which he had purchased, to a veterinarian and, as a result of an examination, the veterinarian pronounced that this rooster then had the disease of diphtheritic roup. Appellant complained of this testimony and, at the close of evidence, the trial court struck all of this testimony from the record and advised the jury to disregard it. We believe this evidence was admissible. As stated above, it was disclosed that a chronic form of this diphtheritic roup may continue for several months. We believe it entirely possible under the evidence submitted that a chronic form of this disease could exist in the DeBoer flock from September 30, 1939, to as late as January, 1940, and that the presence of the disease in January could be considered by the jury in determining whether or not the disease was present in the flock when the roosters were delivered to plaintiff. We therefore believe the admission of the evidence was without error. The striking of the evidence seems to have been in excess of caution indulged in by the trial court. We have examined the other alleged errors, and are of the opinion that, if there were error, it was without prejudice to the appellant.

The judgment appealed from is affirmed.

POLLEY, P.J., and ROBERTS and WARREN, JJ., concur.

SMITH, J., not sitting.