[No. B004734. Second Dist., Div. Six. Oct. 9, 1985.]

BRIAN KEITH, Plaintiff and Appellant, v.
JAMES BUCHANAN et al., Defendants and Respondents.

**COUNSEL**

Charles C. McCarthy, McCarthy, Bullis & Post and McCarthy & Bullis for Plaintiff and Appellant.

Jessup & Beecher, Keith D. Beecher, William R. Alvin, Fairfield, McDonald, Sullard & Lane and William M. Slaughter for Defendants and Respondents.

**OPINION**

**OCHOA, J.**\*—This breach of warranty case is before this court after the trial court granted defendants' motion for judgment at the close of plaintiff's

---

*Assigned by the Chairperson of the Judicial Council.

case during the trial proceedings. We hold that an express warranty under section 2313 of the California Uniform Commercial Code was created in this matter, and that actual reliance on the seller's factual representation need not be shown by the buyer. The representation is presumed to be part of the basis of the bargain, and the burden is on the seller to prove that the representation was not a consideration inducing the bargain. We affirm all other aspects of the trial court's judgment but reverse in regard to its finding that no express warranty was created and remand for further proceedings consistent with this opinion.

## STATEMENT OF FACTS

Plaintiff, Brian Keith, purchased a sailboat from defendants in November 1978 for a total purchase price of $75,610. Even though plaintiff belonged to the Waikiki Yacht Club, had attended a sailing school, had joined the Coast Guard Auxiliary, and had sailed on many yachts in order to ascertain his preferences, he had not previously owned a yacht. He attended a boat show in Long Beach during October 1978 and looked at a number of boats, speaking to sales representatives and obtaining advertising literature. In the literature, the sailboat which is the subject of this action, called an "Island Trader 41," was described as a seaworthy vessel. In one sales brochure, this vessel is described as "a picture of sure-footed seaworthiness." In another, it is called "a carefully well-equipped, and very seaworthy live-aboard vessel." Plaintiff testified he relied on representations in the sales brochures in regard to the purchase. Plaintiff and a sales representative also discussed plaintiff's desire for a boat which was ocean-going and would cruise long distances.

Plaintiff asked his friend, Buddy Ebsen, who was involved in a boat building enterprise, to inspect the boat. Mr. Ebsen and one of his associates, both of whom had extensive experience with sailboats, observed the boat and advised plaintiff that the vessel would suit his stated needs. A deposit was paid on the boat, a purchase contract was entered into, and optional accessories for the boat were ordered. After delivery of the vessel, a dispute arose in regard to its seaworthiness.

Plaintiff filed the instant lawsuit alleging causes of action in breach of express warranty and breach of implied warranty. The trial court granted defendants' Code of Civil Procedure section 631.8 motion for judgment at the close of plaintiff's case. The court found that no express warranty was established by the evidence because none of the defendants had undertaken in writing to preserve or maintain the utility or performance of the vessel, nor to provide compensation for any failure in utility or performance. It found that the written statements produced at trial were opinions or com-

mendations of the vessel. The court further found that no implied warranty of fitness was created because the plaintiff did not rely on the skill and judgment of defendants to select and furnish a suitable vessel, but had rather relied on his own experts in selecting the vessel.

DISCUSSION

## I. EXPRESS WARRANTY

■ California Uniform Commercial Code section 2313[1] provides, inter alia, that express warranties are created by (1) any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain, and (2) any description of the goods which is made part of the basis of the bargain. Formal words such as "warranty" or "guarantee" are not required to make a warranty, but the seller's affirmation of the value of the goods or an expression of opinion or commendation of the goods does not create an express warranty.

■ In addition, the Song-Beverly Consumer Warranty Act (Civ. Code, § 1790 et seq.) establishes broad statutory control over warranties in consumer sales where consumer goods are used or bought for use primarily for personal, family, or household purposes. Provisions of the Civil Code relating to warranties do not affect the rights and obligations of parties under the Commercial Code, except that where conflicts exist between the code provisions, the rights guaranteed to buyers of consumer goods under the provisions of the Consumer Warranty Act prevail. (Civ. Code, § 1790.3.)

The act defines an express warranty, in pertinent part, as "[a] written statement arising out of a sale to the consumer of a consumer good pursuant to which the manufacturer, distributor, or retailer undertakes to preserve or maintain the utility or performance of the consumer good or provide compensation if there is a failure in utility or performance . . . ." (Civ. Code, § 1791.2, subd. (a)(1).) Again, formal words are not required in order to

---

[1]Section 2313: "(1) Express warranties by the seller are created as follows:

"(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

"(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

"(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

"(2) It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty."

create an express warranty, but statements of value, opinion, or commendation do not create a warranty.

The trial court appropriately found that there was no written undertaking to preserve or maintain the utility or performance of a consumer good or to provide compensation if there was a failure in utility or performance at the time the purchase contract for the sailboat was made. No claim, therefore, is cognizable that an express warranty existed in this action pursuant to the provisions of the Song-Beverly Consumer Warranty Act. However, at the time of argument on the motion for judgment, plaintiff's counsel had argued claims based on express warranty under the provisions of *both* the Civil Code and the Commercial Code, and no analysis was undertaken in regard to express warranty under the provisions of the California Uniform Commercial Code.

California Uniform Commercial Code section 2313, regarding express warranties, was enacted in 1963 and consists of the official text of Uniform Commercial Code section 2-313 without change. ■ In deciding whether a statement made by a seller constitutes an express warranty under this provision, the court must deal with three fundamental issues. First, the court must determine whether the seller's statement constitutes an "affirmation of fact or promise" or "description of the goods" under California Uniform Commercial Code section 2313, subdivision (1)(a) or (b), or whether it is rather "merely the seller's opinion or commendation of the goods" under section 2313, subdivision (2). Second, assuming the court finds the language used susceptible to creation of a warranty, it must then be determined whether the statement was "part of the basis of the bargain." Third, the court must determine whether the warranty was breached. (See *Sessa* v. *Riegle* (E.D.Pa. 1977) 427 F.Supp. 760, 765.)

■ A warranty relates to the title, character, quality, identity, or condition of the goods. The purpose of the law of warranty is to determine what it is that the seller has in essence agreed to sell. (*A. A. Baxter Corp.* v. *Colt Industries, Inc.* (1970) 10 Cal.App.3d 144, 153 [88 Cal.Rptr. 842].) "Express warranties are chisels in the hands of buyers and sellers. With these tools, the parties to a sale sculpt a monument representing the goods. Having selected a stone, the buyer and seller may leave it almost bare, allowing considerable play in the qualities that fit its contours. Or the parties may chisel away inexactitudes until a well-defined shape emerges. The seller is bound to deliver, and the buyer to accept, goods that match the sculpted form. [Fn. omitted.]" (*Special Project: Article Two Warranties in Commercial Transactions, Express Warranties—Section 2-313* (1978-79) 64 Cornell L.Rev. 30 (hereafter cited as *Warranties in Commercial Transactions*) at pp. 43-44.)

A. *Affirmation of fact, promise or description versus statement of opinion, commendation or value.*

■ "The determination as to whether a particular statement is an expression of opinion or an affirmation of a fact is often difficult, and frequently is dependent upon the facts and circumstances existing at the time the statement is made." (*Willson* v. *Municipal Bond Co.* (1936) 7 Cal.2d 144, 150 [59 P.2d 974].) Recent decisions have evidenced a trend toward narrowing the scope of representations which are considered opinion, sometimes referred to as "puffing" or "sales talk," resulting in an expansion of the liability that flows from broad statements of manufacturers or retailers as to the quality of their products. Courts have liberally construed affirmations of quality made by sellers in favor of injured consumers. (*Hauter* v. *Zogarts* (1975) 14 Cal.3d 104, 112 [120 Cal.Rptr. 681, 534 P.2d 377, 7 A.L.R.3d 1282]; see also 55 Cal.Jur.3d, Sales, § 74, p. 580.) It has even been suggested "that in an age of consumerism all seller's statements, except the most blatant sales pitch, may give rise to an express warranty." (1 Alderman and Dole, A Transactional Guide to the Uniform Commercial Code (2d ed. 1983) p. 89.)

Courts in other states have struggled in efforts to create a formula for distinguishing between affirmations of fact, promises, or descriptions of goods on the one hand, and value, opinion, or commendation statements on the other.[2] The code comment indicates that the basic question is: "What statements of the seller have in the circumstances and in objective judgment become part of the basis of the bargain?" The commentators indicated that the language of subsection (2) of the code section was included because "common experience discloses that some statements or predictions cannot fairly be viewed as entering into the bargain." (See U. Com. Code com. 8 to Cal. U. Com. Code, § 2313, West's Ann. Com. Code (1964) p. 250, Deering's Cal. Codes Ann. p. 143.)

Statements made by a seller during the course of negotiation over a contract are presumptively affirmations of fact unless it can be demonstrated that the buyer could only have reasonably considered the statement as a statement of the seller's opinion. Commentators have noted several factors which tend to indicate an opinion statement. These are (1) a lack of specificity in the statement made, (2) a statement that is made in an equivocal manner, or (3) a statement which reveals that the goods are experimental in nature. (See *Warranties in Commercial Transactions, supra,* at pp. 61-65.)

---

[2]See *Wedding* v. *Duncan* (1949) 310 Ky. 374 [220 S.W.2d 564, 567]; *Boehm* v. *Fox* (Kan.App. 1973) 12 U.Com.Code Rep.Ser. 32, 40; *Pake* v. *Byrd* (1982) 55 N.C.App. 551 [286 S.E.2d 588, 589-590].

█ It is clear that statements made by a manufacturer or retailer in an advertising brochure which is disseminated to the consuming public in order to induce sales can create express warranties. (*Fundin* v. *Chicago Pneumatic Tool Co.* (1984) 152 Cal.App.3d 951, 957 [199 Cal.Rptr. 789]; see also *Community Television Services* v. *Dresser Industries* (8th Cir. 1978) 586 F.2d 637, 640, cert. den. 1979; *Fargo Mach. & Tool Co.* v. *Kearney & Trecker Corp.* (E.D.Mich. 1977) 428 F.Supp. 364, 370-371; *Colorado-Ute Elec. Ass'n, Inc.* v. *Envirotech Corp.* (D.Colo. 1981) 524 F.Supp. 1152, 1156; *Neville Const. Co.* v. *Cook Paint and Varnish Co.* (8th Cir. 1982) 671 F.2d 1107, 1110.) In the instant case, the vessel purchased was described in sales brochures as "a picture of sure-footed seaworthiness" and "a carefully well-equipped and very seaworthy vessel." The seller's representative was aware that appellant was looking for a vessel sufficient for long distance ocean-going cruises. The statements in the brochure are specific and unequivocal in asserting that the vessel is seaworthy. Nothing in the negotiation indicates that the vessel is experimental in nature. In fact, one sales brochure assures prospective buyers that production of the vessel was commenced "after years of careful testing." The representations regarding seaworthiness made in sales brochures regarding the Island Trader 41 were affirmations of fact relating to the quality or condition of the vessel.

### B. *"Part of the basis of the bargain" test.*

█ Under former provisions of law, a purchaser was required to prove that he or she acted in reliance upon representations made by the seller. (*Grinnell* v. *Charles Pfizer & Co.* (1969) 274 Cal.App.2d 424, 440 [79 Cal.Rptr. 369].) California Uniform Commercial Code section 2313 indicates only that the seller's statements must become "part of the basis of the bargain." According to official comment 3 to this Uniform Commercial Code provision, "no particular reliance . . . need be shown in order to weave [the seller's affirmations of fact] into the fabric of the agreement. Rather, any fact which is to take such affirmations, once made, out of the agreement requires clear affirmative proof." (See U. Com. Code com. 3 to Cal. U. Com. Code, § 2313, 23A West's Ann. Com. Code (1964 ed.) p. 249, Deering's Ann. Cal. U. Com. Code (1970 ed.) p. 142.)

The California Supreme Court, in discussing the continued viability of the reliance factor, noted that commentators have disagreed in regard to the impact of this development. Some have indicated that it shifts the burden of proving nonreliance to the seller, and others have indicated that the code eliminates the concept of reliance altogether. (*Hauter* v. *Zogarts, supra,* 14 Cal.3d at pp. 115-116.) The court did not resolve this issue, but noted that decisions of other states prior to that time had "ignored the significance of the new standard and have held that consumer reliance still is a vital ingre-

dient for recovery based on express warranty." (*Id.*, at p. 116, fn. 13; see also *Fogo* v. *Cutter Laboratories, Inc.* (1977) 68 Cal.App.3d 744, 760 [137 Cal.Rptr. 417].)

The shift in language clearly changes the degree to which it must be shown that the seller's representation affected the buyer's decision to enter into the agreement. A buyer need not show that he would not have entered into the agreement absent the warranty or even that it was a dominant factor inducing the agreement. A warranty statement is deemed to be part of the basis of the bargain and to have been relied upon as one of the inducements for the purchase of the product. In other words, the buyer's demonstration of reliance on an express warranty is "not a prerequisite for breach of warranty, as long as the express warranty involved became part of the bargain. See White & Summers, Uniform Commercial Code (2d ed. 1980) § 9-4. If, however, the resulting bargain does not rest at all on the representations of the seller, those representations cannot be considered as becoming any part of the 'basis of the bargain.' . . ." (*Allied Fidelity Ins. Co.* v. *Pico* (1983) 99 Nev. 15 [656 P.2d 849, 850].)

The official Uniform Commercial Code comment in regard to section 2-313 "indicates that in actual practice affirmations of fact made by the seller about the goods during a bargain are regarded as part of the description of those goods; hence no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement." (*Young & Cooper, Inc.* v. *Vestring* (1974) 214 Kan. 311 [521 P.2d 281, 291]; *Brunner* v. *Jensen* (1974) 215 Kan. 416 [524 P.2d 1175, 1185].) It is clear from the new language of this code section that the concept of reliance has been purposefully abandoned. (*Interco Inc.* v. *Randustrial Corp.* (Mo.App. 1976) 533 S.W.2d 257, 261; see also *Winston Industries, Inc.* v. *Stuyvesant Insurance Co., Inc.* (1975) 55 Ala.App. 525 [317 So.2d 493, 497].)

The change of the language in section 2313 of the California Uniform Commercial Code modifies both the degree of reliance and the burden of proof in express warranties under the code. The representation need only be part of the basis of the bargain, or merely a factor or consideration inducing the buyer to enter into the bargain. A warranty statement made by a seller is presumptively part of the basis of the bargain, and the burden is on the seller to prove that the resulting bargain does not rest at all on the representation.

The buyer's actual knowledge of the true condition of the goods prior to the making of the contract may make it plain that the seller's statement was not relied upon as one of the inducements for the purchase, but the burden is on the seller to demonstrate such knowledge on the part of the

buyer. Where the buyer inspects the goods before purchase, he may be deemed to have waived the seller's express warranties. But, an examination or inspection by the buyer of the goods does not necessarily discharge the seller from an express warranty if the defect was not actually discovered and waived. (*Doak Gas Engine Co.* v. *Fraser* (1914) 168 Cal. 624, 627 [143 P. 1024]; *Munn* v. *Earle C. Anthony, Inc.* (1918) 36 Cal.App. 312, 315 [171 P. 1082]; *Capital Equipment Enter., Inc.* v. *North Pier Terminal Co.* (1969) 117 Ill.App.2d 264 [254 N.E.2d 542, 545].)

■ Appellant's inspection of the boat by his own experts does not constitute a waiver of the express warranty of seaworthiness. Prior to the making of the contract, appellant had experienced boat builders observe the boat, but there was no testing of the vessel in the water.[3] Such a warranty (seaworthiness) necessarily relates to the time when the vessel has been put to sea (*Werner* v. *Montana* (1977) 117 N.H. 721 [378 A.2d 1130, 1134-1135]) and has been shown to be reasonably fit and adequate in materials, construction, and equipment for its intended purposes (*Daly* v. *General Motors Corp.* (1978) 20 Cal.3d 725, 739 [144 Cal.Rptr. 380, 575 P.2d 1162]; *Vittone* v. *American President Lines* (1964) 228 Cal.App.2d 689, 693-694 [39 Cal.Rptr. 758]).

In this case, appellant was aware of the representations regarding seaworthiness by the seller prior to contracting. He also had expressed to the seller's representative his desire for a long distance ocean-going vessel. Although he had other experts inspect the vessel, the inspection was limited and would not have indicated whether or not the vessel was seaworthy. It is clear that the seller has not overcome the presumption that the representations regarding seaworthiness were part of the basis of this bargain.

II. IMPLIED WARRANTY

Appellant also claimed breach of the implied warranty of fitness for a particular purpose[4] in regard to the sale of the subject vessel. An implied

---

[3]Evidence was presented of examination or inspection of the boat after the making of the contract of sale and prior to delivery and acceptance of the vessel. Such an inspection would be irrelevant to any issue of express warranty. Although it deals with implied warranties as opposed to express warranties, the Uniform Commercial Code comment 8 to section 2-316 (Cal.U. Com. Code, § 2316) is instructive: "Under paragraph (b) of subsection (3) warranties may be excluded or modified by the circumstances where the buyer examines the goods or a sample or model of them *before entering into the contract. 'Examination' as used in this paragraph is not synonymous with inspection before acceptance or at any other time after the contract has been made. It goes rather to the nature of the responsibility assumed by the seller at the time of the making of the contract.*" (See U. Com. Code com. 8 to Cal. U. Com. Code, § 2316, 23A West's Ann. Com. Code (1964 ed.) p. 308, Deering's Ann. Cal. U. Com. Code (1970 ed.) p. 193, italics added.)

[4]No claim of breach of implied warranty of merchantability has been presented in this action.

warranty of fitness for a particular purpose arises when a "seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods," which are fit for such purpose. (Cal. U. Com. Code, § 2315.) The Consumer Warranty Act makes such an implied warranty applicable to retailers, distributors, and manufacturers. (Civ. Code, §§ 1791.1, 1792.1, 1792.2, subd. (a).) ■■■ An implied warranty of fitness for a particular purpose arises only where (1) the purchaser at the time of contracting intends to use the goods for a particular purpose, (2) the seller at the time of contracting has reason to know of this particular purpose, (3) the buyer relies on the seller's skill or judgment to select or furnish goods suitable for the particular purpose, and (4) the seller at the time of contracting has reason to know that the buyer is relying on such skill and judgment. (*Metowski* v. *Traid Corp.* (1972) 28 Cal.App.3d 332, 341 [104 Cal.Rptr. 599].)

The reliance elements are important to the consideration of whether an implied warranty of fitness for a particular purpose exists. "If the seller had no reason to know that he was being relied upon, his conduct in providing goods cannot fairly be deemed a tacit representation of their suitability for a particular purpose. And if the buyer did not in fact rely, then the principal justification for imposing a fitness warranty disappears." (See *Warranties in Commercial Transactions, supra,* at p. 89.) The major question in determining the existence of an implied warranty of fitness for a particular purpose is the reliance by the buyer upon the skill and judgment of the seller to select an article suitable for his needs. (*Bagley* v. *International Harvester Co.* (1949) 91 Cal.App.2d 922, 925 [206 P.2d 43]; *Drumar M. Co.* v. *Morris Ravine M. Co.* (1939) 33 Cal.App.2d 492, 495-496 [92 P.2d 424].)

■■■ The trial court found that the plaintiff did not rely on the skill and judgment of the defendants to select a suitable vessel, but that he rather relied on his own experts. ■■■ "Our sole task is to determine 'whether the evidence, viewed in the light most favorable to [respondent], sustains [these] findings.' [Citations.] Moreover, 'in examining the sufficiency of the evidence to support a questioned finding an appellate court must accept as true all evidence tending to establish the correctness of the finding as made, taking into account, as well, all inferences which might reasonably have been thought by the trial court to lead to the same conclusion.' [Citations.] If appellate scrutiny reveals that substantial evidence supports the trial court's findings and conclusions, the judgment must be affirmed." (*Board of Education* v. *Jack M.* (1977) 19 Cal.3d 691, 697 [139 Cal.Rptr. 700, 566 P.2d 602].)

■■■ A review of the record reveals ample evidence to support the trial court's finding. Appellant had extensive experience with sailboats at the

time of the subject purchase, even though he had not previously owned such a vessel. He had developed precise specifications in regard to the type of boat he wanted to purchase. He looked at a number of different vessels, reviewed their advertising literature, and focused on the Island Trader 41 as the object of his intended purchase. He also had friends look at the boat before making the final decision to purchase. The trial court's finding that the buyer did not rely on the skill or judgment of the seller in the selection of the vessel in question is supported by substantial evidence.

The trial court's judgment that no express warranty existed in this matter is reversed. The trial court's judgment is affirmed in all other respects. Since considerable contradictory evidence was elicited at trial relating to the asserted breach of warranty of seaworthiness of the subject vessel, and since the trial court made no finding in regard to that issue, the matter is remanded to the trial court for further proceedings consistent with this opinion. Each party is to bear his own costs on appeal.

Stone, P. J., and Gilbert, J., concurred.