[Civ. No. 6797.   Third Dist.    June 3, 1943.]

ISSIC DRABKIN et al., Appellants, v. FRANK BIGELOW et al., Respondents.

Jack J. Miller for Appellants.

Rowan Hardin for Respondents.

THOMPSON, J.—The plaintiffs brought suit to recover the agreed price of carpets and furnishings supplied for use in a mortuary at Angels Camp. The complaint contains two counts. The first cause of action is founded on an alleged book account. The second is for the value of the goods. The carpets were defective in that they were not large enough to cover the floors. The defendants refused to permit plaintiffs to piece the carpets, and insisted that several entire new strips of carpet should be supplied. This was not done and the defendants refused to accept the carpets and ordered other carpets and furnishings from another firm.

The defendants denied the material allegations of the complaint and filed a counterclaim for damages for delay in fulfilling the contract. Findings were adopted favorable to the defendants in every respect. Judgment was rendered for the defendants for damages in the sum of $123.50, and costs, and it was adjudged that the plaintiffs take nothing by their action. From that judgment this appeal was perfected.

It is contended the findings and judgment are not supported by the evidence, chiefly because insufficient time was allowed the plaintiffs in which to repair the admitted defects in the size of the carpets.

The plaintiffs are copartners who are engaged in a furniture and carpet business at Sonora. The defendants are husband and wife. They constructed a building at Angels Camp for the purpose of conducting a mortuary business. About August 1, 1940, they negotiated with plaintiffs to supply the carpets, window blinds and draperies for their building. Measurements of the floors to be carpeted were then made by the plaintiffs. In company with one of the plaintiffs the defendants visited a wholesale carpet store in San Francisco where they selected the material and pattern for their carpets. It was then orally agreed between the parties that the carpets selected, which were to consist of machine-sewed strips, would be furnished, together with specified Venetian

blinds and draperies for the sum of $545.71, on or before September 3rd or 4th of that year. The carpets were not delivered at the defendants' building until September 5th. When they were spread on the floors it was discovered the chapel carpet was too small to cover the space. The workmen proposed to enlarge the carpet by sewing on pieces, to which the defendants objected. The defendants declared they would not permit plaintiffs to remedy the defect by piecing the carpet. On September 7th they demanded the substitution of three new strips of carpet. The respondents contend this was not agreed to. No further work was performed. Written notice was served on the plaintiffs on September 18th, terminating the contract unless they fulfilled their agreement by substituting three new machine-sewed strips of carpet, and supplying the blinds and draperies within two days, all in a workmanlike manner according to the contract. That demand was not fulfilled. No further work was performed. The defendants claim the plaintiffs never agreed to substitute new strips of carpet for the defective ones. After the time specified in the notice had expired, the defendants removed the plaintiffs' carpets and materials from their building and stored them, subject to plaintiffs' right of possession. Defendants then purchased carpets and furnishings for their building from John Breuner Company at Stockton, which were supplied and installed within a period of about ten days. This suit was then commenced.

We are of the opinion there is sufficient evidence to support the findings and judgment to the effect that plaintiffs failed to fulfill their contract to supply the selected carpet suitable in size to cover the floors of defendants' building. ■ Having informed the plaintiffs of the particular purpose for which the carpets were intended to be used, and the plaintiffs having taken the measurements for the carpets, there is an implied warranty "that the goods shall be reasonably fit for such purpose." (Sec. 1735, subd. 1, Civ. Code.)

The defect with respect to the size of the carpet for the chapel floor is conceded by the appellants. There is no conflict of evidence in that regard. ■ But it is contended that plaintiffs agreed to correct that defect "to the satisfaction of the defendants," who, without reasonable excuse, prevented plaintiffs from performing their contract by unduly limiting the time within which it was possible to do so. It is asserted the

failure on the part of the plaintiffs to perform their contract within the time prescribed was excused under the provisions of section 1511 of the Civil Code, and that defendants are therefore liable for the contract price of the carpets and supplies. That section reads in part:

"The want of performance of an obligation, or of an offer of performance, in whole or in part, or any delay therein, is excused by the following causes, to the extent to which they operate:

"1. When such performance or offer is prevented or delayed by the act of the creditor, or by the operation of law, even though there may have been a stipulation that this shall not be an excuse."

There is no real dispute regarding the cited principles of law. There is, however, an absolute difference of opinion as to whether those principles of law apply to the facts of this case. Regarding the facts as disclosed by the record there is a sharp conflict as to whether the plaintiffs ever agreed to remedy their acknowledged defect in the size of the chapel carpet, by substituting new machine-sewed strips for the ones which were too short, or whether plaintiffs did not insist that defendants accept the carpet with the short lengths merely pieced by sewing on additional material. In other words, did the plaintiffs offer to remedy the defect so as to render the carpet reasonably fit for the purpose for which it was intended to be used? The evidence is in irreconcilable conflict in that regard.

The appellants concede that the carpet was cut too small for the chapel. In their opening brief they say:

"Either on that day or the next, it was learned that the workmen had miscut the carpeting, so that it did not fit up against the baseboards and did not fit around staggered places such as bays, alcoves and doorways. It is admitted that this is a fact—at that stage the job was not properly done."

When the defect was discovered on September 5th, after the carpet was spread on the floor, Mrs. Bigelow instructed the workmen to suspend work until it could be decided what could be done to remedy the defect. Issic Drabkin was called and came to the building at once. On observing the condition of the carpet he threw his hands to his head and exclaimed "what a head-ache." He did not state how they could or would correct the error. Mrs. Bigelow again called him on

the telephone the night of September 6th. He was very angry and said to her:

"You don't know a thing, but think you are sure smart. You haven't any business interfering with them, and you better get yourself an attorney. You will pay for every day the men haven't worked."

He was then told they would have to settle with her husband Frank Bigelow the manner of correcting the mistake in cutting the carpet too small for the room. On September 7th, Mr. Bigelow saw Morris Melser, an employee of the plaintiffs, who told him "everything can be taken care of" and they were willing to do the right thing. Mr. Bigelow replied, "That reads fine, but you are only an employee. If I can hear that from the Drabkin Brothers. You get Ike or Izzy, and bring them out, and have them tell me that, and it will be fine." September 8th, Issic had a conversation with Mr. Bigelow regarding the dispute as to how the error could and would be remedied. Mr. Bigelow testified:

"I asked what he was going to do about it. He would not commit himself. All he would say, was what I wanted him to do. . . . All I wanted him to know, I didn't want a patched up job. It would be necessary for him to take up all the carpet. Before that was done, I would like to see some kind of system there. . . . Q. What did you mean? A. I was leaving that up to him, but he didn't commit himself. Q. Didn't he offer to replace or fix up three strips to meet your specifications? A. He didn't commit himself. He said three strips need to be put in. I told him to fix it the way he wanted to, but I wanted a first class job. . . . He would not commit himself, but he said three strips will fix the job. Q. Did you tell him, do you expect me to pay for that? [the three extra strips] A. There was also damage done to the building. Scarred base board, plaster chipped, one window sill ruined where they dragged the carpet through, and it had to be re-painted. . . . I asked what kind of a settlement he would make. Q. You had reference to whether or not he would come down in his price after he made such a statement, and the way he laid the carpet? A. That is what I wanted. . . . If he had done the job in first class manner and workmanship job, it would have been satisfactory. . . . Q. You were not embittered at all toward Mr. Drabkin? A. I wanted him to make a statement, what he was going to do. Q. Didn't Mr. Drabkin . . .

tell you . . . he wanted to fix the job to your satisfaction? A. Yes sir, he told me that, but he didn't tell me what he would do about it. . . . Q. Did he at any time commit himself as to what he would do? A. No sir, he did not. He said three new strips of carpet *could* be put in. And he could get a portable machine to sew it. I told him if he wanted to finish the job, I would not stop him. I knew I could be held responsible if I kept him from completing the job. I told him I wanted him to complete the work. Was trying to make some kind of arrangement before hand.''

The appellants' briefs do not raise the question of insufficiency of the evidence to support the finding that defendants suffered $123.50 damages on account of the delay in obtaining the use of the building, costs of storage and injury to the walls. We shall therefore assume that award is supported by the evidence.

It is true that the plaintiffs testified they told the defendants they were willing to supply the three strips of carpet demanded by the defendants and to complete the contract to their entire satisfaction. We are therefore not attempting to quote plaintiffs' evidence in conflict with that of the defendants on that subject. The preceding evidence is certainly reasonably susceptible of the construction placed upon it by the trial judge, to the effect that the defendants did not prohibit or prevent plaintiffs from completing the job. They did insist on a good workmanlike job, and said they did not want a ''patched up job.'' They also wanted to know what allowance would be made for the damage plaintiffs had done to the wall, baseboard and window. They also wanted to know whether plaintiffs would charge them an additional price for the three new strips of carpet if they were substituted. According to the defendants, the plaintiffs admitted they *could* replace the three strips, but they did not agree to do so. Even if the inference is that they did agree to supply the three new strips, they did not tell defendants whether they would be charged an additional sum for so doing. Basing our conclusion on the evidence of the defendants, it is reasonable to assume that if the plaintiffs had agreed to replace the three strips of carpet without further expense to the defendants, nothing would have prevented them from completing their job within a few days after September 7th, when that demand was definitely made.

On appeal it is our duty to support the findings and judgment of the trial court if there is any substantial evidence, or reasonable inferences to be drawn therefrom, in support thereof. This well-known rule is concisely stated in *Crawford* v. *Southern Pacific Co.*, 3 Cal.2d 427 [45 P.2d 183], as follows: "It is an elementary, but often overlooked principle of law, that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court."

█ The remaining question is whether the plaintiffs were given a reasonable time within which to rectify their mistake before the contract of purchase was terminated. Defendants served a written notice on plaintiffs on September 18th that unless the contract was fulfilled within two days of that time it would be considered rescinded. It is argued that the two days granted from that time rendered it impossible to order the carpeting from San Francisco and to complete the job within that time. This may be conceded. But the evidence is undisputed that plaintiffs had notice of the defective work on September 5th. They knew not later than September 8th that the defendants expected them to supply three new strips of carpet to replace the short ones. They had originally agreed to complete the work on September 4th. They knew the defendants were anxious to occupy their building as a mortuary at the earliest possible date. It was their duty to take steps promptly to remedy their mistake as soon as they could reasonably do so. They should have ordered the extra strips of carpeting not later than September 8th. The written notice was merely additional time allowed after their former demands. The plaintiffs really had twelve days' notice to complete the job after receiving information that defendants expected them to supply three new strips of carpeting, during which time they made no effort to procure the material or to complete the work. The blinds and draperies were never delivered.

The judgment is affirmed.

Adams, P. J.; and Peek, J., concurred.