[Civ. No. 21749.   Second Dist., Div. Two.   Dec. 3, 1956.]

LOREN W. ODELL et al., Respondents, v. A. FRANKLIN FRUEH et al., Defendants; E. R. FRUEH, Appellant.

506

Francis C. Jones for Appellant.

Grant & Popovich, Irvin Grant and George J. Popovich, for Respondents.

MOORE, P. J.—Defendant appeals a judgment imposing liability for breach of warranty.

Appellant E. R. Frueh is the owner of a business conducted under the firm name of Alkali Neutralizer Company which manufactures, sells and applies an anti-alkaloid known as the "Ashford Formula" or "Ashford Process." A. Franklin Frueh, husband of appellant, is the person actively engaged in the conduct of the business. Respondents are partners doing business under the name of Odell Construction Company.

The Glendale Unified School District was planning to construct a building for an elementary school by means of what is known as "tilt-up" construction. By such method, a slab of concrete is laid as the flooring of the building, an anti-bonding agent is applied, another slab of concrete is laid on top of the floor slab, and successive slabs are constructed in layers. After all the slabs have been poured, the top layers are "tilted up" on their ends to form the walls of the structure, leaving the floor slab upon the foundation. Having learned of the planned building activity, Mr. Frueh contacted the authorities of the school district and suggested that the "Ashford Formula" be specified for application upon the concrete floor of the proposed school in order to prevent the formation of alkali beneath floor covering material and as a cure for new concrete. Although advised that the tilt-up

method was planned, Mr. Frueh assured the district's officials that the formula would not be harmful to any of the surfaces with which it might come in contact but that on the contrary the same could be used to advantage with the tilt-up technique.

When the school district informed the firm of architects retained to draw the plans and specifications of the new building that the "Ashford Formula" should be specified, a member of the firm contacted Mr. Frueh for further information. The architects had not had prior experience with the use of the process sold by appellant. When appellant's husband was again advised that the construction was to be accomplished by the tilt-up method, he stated that (1) the Ashford Formula had been successfully used by the company on previous construction projects which involved tilt-up construction; (2) the formula would in no way interfere with the action of the anti-bonding agent to be applied between the successive slabs to prevent their adhesion; (3) the formula should be applied under the strict supervision of appellant's company upon the newly laid concrete just when the concrete should begin to harden. The architects relied upon such information by specifying that the product be used.

On April 21, 1954, respondents executed a contract with the school district and the county for the construction of certain classrooms of the proposed school. A portion of the specifications included in such contract required that the "Ashford Process" as manufactured by the Alkali Neutralizer Company be purchased and applied "in strict accordance with their recommendation."

During the latter part of May or early June 1954, Mr. Frueh visited the construction site. He requested respondents' supervisor to inform him when the concrete was to be poured in order that he might direct the application of his anti-alkaloid. He told the supervisor that the formula had been successfully used on tilt-up jobs before.

On the day when the concrete was poured, Mr. Frueh and others of appellant's employees applied the process to the floors of a portion of the construction designated "Unit A." The formula was not applied to concrete poured for the flooring of "Unit B." An anti-bonding agent was applied between the layers of poured concrete on each unit. When the time came to tilt-up the slabs, those on Unit B lifted easily. However, the layer directly upon the floor slab of Unit A, to which the formula had been applied, adhered and would not tilt. All the slab was damaged in some degree,

and a portion was completely destroyed. The trial court found that appellant had expressly and impliedly warranted against such an eventuality.

### FINDING OF EXPRESS WARRANTY

The evidence is conclusive that Mr. Frueh represented to both the school district and the architects that the Ashford Process could be successfully employed with the tilt-up construction method and would not harm any of the surfaces. This representation was an affirmation of fact by the seller relating to the goods sold; the natural effect thereof was to induce reliance by the buyer; the goods were purchased because of such representations; the process thereby was warranted not to hinder tilt-up construction. (Civ. Code, § 1732.)

A seller of goods other than foodstuffs is bound by his unadvertised warranty only to parties with whom he is contractually obligated. (*Burr* v. *Sherwin Williams Co.*, 42 Cal.2d 682, 695 [268 P.2d 1041].) Here the plaintiffs who suffered monetarily from reliance upon the representations of appellant's agent were indeed the initial purchasers and in privity of contract with appellant. The fact that the representations constituting the warranty were not made immediately to the purchasers but to the agencies which directed them to buy and use the product is immaterial. There is no rule that the warranty must be made directly to the buyer where the seller intends that he rely upon the warranty. The law has always recognized that communication by indirection may be just as effective as when direct. For example, a fraudulent misrepresentation is no less actionable because made to a third person who is intended to and does relay the information to the person who relies. (See *Cohen* v. *Citizens Nat. Trust & Sav. Bank*, 143 Cal.App.2d 480, 484 [300 P.2d 14].) If appellant had induced the school district and architects to *persuade* respondents to purchase the Ashford Process and thereby authorized the district and its architects as agents to warrant the fitness of the product, there would be no question of liability. The situation is not improved from appellant's standpoint because the warranties were communicated to parties with power to *direct* the purchase of the formula by respondents.

A similar factual situation was present in *United States Pipe & Foundry Co.* v. *City of Waco*, 130 Tex. 126 [108 S.W. 2d 432]. However, in that case it was the public agency rather than the purchasing contractor which claimed the benefit of the warranty. The court sustained recovery on

the theory that the agency which drew the specifications and the contractor who complied therewith were identical in interest. The instant matter is *a fortiori* since the plaintiffs are the parties actually in privity of contract with the vendor.

### FINDING OF IMPLIED WARRANTY

"Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies upon the seller's skill or judgment . . . there is an implied warranty that the goods shall be reasonably fit for such purpose." (Civ. Code, § 1735, subd. 1.) ▮ The essential requisites of this "implied warranty of fitness" are that the seller be apprised of the intended use of the product and that the buyer rely upon the skill and know-how of the seller in his selection of the product. (*Schied* v. *Bodinson Mfg. Co.*, 79 Cal.App.2d 134, 141 [179 P.2d 380]; *Drabkin* v. *Bigelow*, 59 Cal.App.2d 68, 70 [138 P.2d 750]; *Starr Piano Co.* v. *Martin*, 119 Cal.App. 642, 648-649 [7 P.2d 383]; *United States Credit Bureau, Inc.* v. *Powell*, 121 Cal.App.2d Supp. 870, 873-874 [264 P.2d 229].) ▮ The warranty is breached if the seller's product is not in fact suitable for the use intended by the purchaser. (*Tremeroli* v. *Austin Trailer Equipment Co.*, 102 Cal.App.2d 464, 475 [227 P.2d 923].)

Here appellant was on notice that the formula was to be applied to floor slabs of concrete upon which successive slabs would be poured; that it was imperative that the slabs not adhere. Neither respondents nor the architects who drew the specifications were familiar with the use of appellant's formula, particularly as used in conjunction with tilt-up construction. The ingredients of the formula were a trade secret of appellant, and therefore the latter would be the only person involved likely to be possessed of the knowledge that the formula would interfere with the action of anti-bonding agents. The architects and respondents repeatedly informed appellant's husband that they were unfamiliar with the use of the product on tilt-up jobs and patently relied upon his judgment that the product was suitable. The elements of implied warranty were all satisfactorily proved.

Appellant introduced evidence that neither she nor her husband was aware that their product would have so dire an effect upon bond-breaking compounds used in tilt-up construction. ▮ But whether or not appellant was actually possessed of knowledge that the Ashford Formula would interfere

with the anti-bonding agents used is immaterial since the liability of appellant is not predicated upon her delict but upon her contract. (*Mary Pickford Co.* v. *Bayly Bros., Inc.,* 12 Cal.2d 501, 520 [86 P.2d 102].)

However, in "the case of a contract to sell or the sale of a specified article under its patent or other trade name, there is no implied warranty as to its fitness for any particular purpose." (Civ. Code, § 1735, subd. 4.) Since the "Ashford Process" was sold under its trade name to respondents, appellant argues that the foregoing section of the code precludes the implication of a warranty of fitness for the purpose intended. This contention would misinterpret the code.

If the requisites of an implied warranty for a particular purpose are present—the vendor's knowledge of the special purpose and the vendee's reliance upon his seller's judgment—the fact that the article sold is described by its trade-name does not prevent the imposition of a warranty obligation. (*Bagley* v. *International Harvester Co.,* 91 Cal.App.2d 922, 925 [206 P.2d 43].) For example, where a buyer was prevailed upon to purchase a gold-washing device by a seller aware of the purpose for which it was to be used and whose skill and experience was relied upon, the fact that the appliance was trade-named did not excuse the seller where neither party gave any importance to the use of the trade name. (*Drumar Mining Co.* v. *Morris Ravine Mining Co.,* 33 Cal. App.2d 492 [92 P.2d 424].) Subdivision 4 enacts only the truism that when a consumer purchases a branded item he is more likely to be relying upon his own judgment or the promotional efforts of the manufacturer than upon the skill and judgment of his seller.

The evidence in this case refutes any contention that the school district, the architects or respondents designated appellant's formula for purchase because of its description as the "Ashford Process." All concerned notified appellant as the vendor and manufacturer of the product that they were unsure whether the formula was usable with the construction technique planned and relied upon her skill and judgment, or that of her agents, in selecting the product.

## EVIDENCE OF BREACH OF WARRANTY

Two groups of classrooms were constructed by respondents, designated Unit A and Unit B. Their methods of construction were substantially identical. The floor slab of Unit A was treated with Ashford Formula and a bond-breaking agent. None of the upper-layer slabs on Unit A were treated with

Ashford Formula nor were any of the slabs on Unit B. All slabs were treated with the identical bond-breaker. Absolutely none of these slabs adhered to the other to a degree sufficient to cause noticeable damage save the floor slab of Unit A and the slab poured immediately on top of it. These circumstances justify a logical inference that it was the Ashford Process which caused the adhesion. The formula was the only material variant in the construction of the units which was brought to the attention of the trial court.

Respondents introduced into evidence the result of an experiment. Two slabs of concrete had been poured at the job site under the direction of a Mr. Emme, an employee of a research laboratory. One was coated with Ashford Formula, the other with the same bond-breaker used in the construction of the elementary school. The same bond-breaker was later applied to the slab treated with the formula. Another slab was poured upon each treated slab. The slab treated with Ashford Formula adhered to the concrete poured upon it. The conditions under which the test was conducted were the same as those which prevailed upon the construction of Units A and B save that the climatic conditions were naturally not identical since some months had intervened, a slightly larger gauge reinforcing steel was used in the test slabs, two coats of Ashford Formula were applied in the test while it is not clear whether two coats were used during the actual construction. The court denied appellant's motion to strike the evidence of the results of this experiment.

■ Admission of the result of a controlled experiment from which to infer facts at issue is largely a matter for the discretion of the trial court (*Grupe* v. *Glick*, 26 Cal.2d 680, 685 [160 P.2d 832]; *Miller* v. *Dollar Steamship Lines, Inc. Ltd.,* 19 Cal.App.2d 206, 214 [64 P.2d 1163]) since a major consideration against the admission of such evidence is the excessive number of collateral issues it may inject into the investigation. (Wigmore on Evidence, rev.ed., §§ 443, 444.) ■ If the evidence would not lead to a plethora of extraneous issues and if the circumstances of the experiment were sufficiently similar to those under consideration to show that logical relevancy exists, the result of the experiment should be admitted for whatever light it may shed on the controversy. (*Ortega* v. *Pacific Greyhound Lines, Inc.,* 20 Cal.App.2d 596 [67 P.2d 702]; Wigmore on Evidence, rev.ed., *supra.*) The genius of the more thoughtful and judicious decisions of the modern day is to admit into evidence any

rational proof that may have a tendency to illuminate the transaction on trial or materially aid in determining the issue but subject, of course, to the discretion of the trial court in excluding extraneous matter. (See Evidence, 18 Cal.Jur.2d § 116, p. 555.)

The court below admitted evidence of the result of an experiment in the exercise of its sound discretion. Since appellant cannot complain here that the trial was over-burdened with collateral issues, she is reduced to contending that the circumstances of the experiment rendered it so logically irrelevant that it was prejudicial error for the court to admit and consider its result. But as suggested above, the conditions at the time of the experiment need not be identical with those obtaining at the time of the occurrence under dispute provided they are substantially similar. (*Ortega* v. *Pacific Greyhound Lines, Inc., supra,* 20 Cal.App.2d 596, and see *Church* v. *Headrick & Brown,* 101 Cal.App.2d 396, 414 [225 P.2d 558]; *Daniels* v. *Johnson,* 38 Cal.App.2d 619, 622 [101 P.2d 707]; note 85 A.L.R. 479, 480.) Exact identity of conditions is next to a scientific impossibility. ▮ The conditions surrounding the test here were sufficiently similar to those prevailing at the construction of the classroom units to enable the trier of fact to consider the result of the experiment in determining the cause of the adhesion of the concrete slabs and assign to it whatever weight was merited.

Appellants contend that the test should have been excluded since Mr. Emme, the person primarily responsible for conducting the experiment, was not personally present to supervise the application of bond-breaker to the slab treated with the formula. However, this fact was testified to by another witness. ▮ A bystander to an experiment may testify to occurrences during that experiment bearing upon its result provided that an understanding of the facts which he witnessed does not require expertise he does not possess. (*Hallawell* v. *Union Oil Co.,* 36 Cal.App. 672, 686 [173 P. 177].) The witness here was the construction inspector for the Glendale Unified School District and well qualified to testify that a bond-breaker rather than some other material was applied to the concrete.

### Failure to Allege or Find Notice

▮ Respondents neither alleged nor did the trial court find that notice had been given to the seller of his breach within a reasonable time after its discovery by the buyer as is required by Civil Code, section 1769. The simple answer is that the

complaint was never demurred to on this ground; and Mr. Frueh admitted on the stand without objection by his attorney that on the very day of the mishap he had been summoned to the construction site and informed of the damage caused by the formula. Even though a complaint is deficient in some material particular, if no objection is made to its defect and proof is introduced without objection upon the issue not pleaded, the insufficiency of the pleading may not be raised for the first time on appeal. (*McClure* v. *Donovan*, 33 Cal.2d 717, 731 [205 P.2d 17]; *Sparks* v. *Sparks*, 101 Cal.App.2d 129, 139 [225 P.2d 238].)

It woud be a perversion of justice to reverse the judgment herein solely for the purpose of having a finding made that due notice had been given to appellant of the failure of the ''formula'' inasmuch as there was no conflict in the evidence on that issue. Mr. Frueh definitely and without contradiction testified that he was promptly notified of the breach of warranty. (Const., art. VI, § 4½.)

Judgment affirmed.

Fox, J., and Ashburn, J., concurred.

A petition for a rehearing was denied December 31, 1956, and appellant's petition for a hearing by the Supreme Court was denied January 30, 1957.