[Civ. No. 24843. Second Dist., Div. Two. Mar. 29, 1961.]

MARK L. HANSON et al., Respondents, v. PHILIP J. MURRAY et al., Appellants.

Joseph F. Rank, Donald J. Pierr, Crider, Tilson & Ruppe, Ronald A. Burford and Henry E. Kappler for Appellants.

Blaine T. Romney and Hugh R. Gallagher for Respondents.

McMURRAY, J. pro tem.*—Defendants appeal from a judgment for $4,200 rendered by a jury against both for damages to the plaintiffs' citrus grove. Plaintiffs' action was based on negligence and breach of implied warranty against Oxnard, as supplier, and against Murray, as applier, of a weed killer which was used to spray rows of carrots growing between the orange trees.

Viewing the facts with all conflicts resolved in favor of the parties prevailing in the court below, we are unable to agree with the appellants' assignments of error. In 1958 the plaintiffs owned a 20-acre triangular section of which 11 acres were planted with varying numbers of 1, 2 and 3-year-old Valencia orange trees. In the late fall of that year plaintiffs planted beds of carrots in the aisles between the rows of trees. About January 1, 1959, someone visited the plaintiff Mark L. Hanson at the ranch which contained the 11 acres and suggested spraying the carrots with weed killer. Mr. Hanson testified that this "someone" was Sheridan Wright, a salesman for Murray. Mr. Wright testified that he did not obtain the order, but rather was informed of the work by Oxnard. The Murray employee who actually sprayed testified that the order came

---

*Assigned by Chairman of Judicial Council.

from Oxnard. Oxnard's manager testified that the order came from Wright.

It is clear from the testimony that whoever received the order from Mr. Hanson was the person who selected the type of spray that was later used as the weed killer. The spray itself was composed of a mixture of a so-called "carrot oil," known as "Stoddard Solvent," and DDT. It was ordered by Oxnard from Standard Oil Company and Murray's employee received delivery at the Standard plant and proceeded directly to use it in spraying the field.

The spraying was done on January 8 and 9, 1959. Murray's employee used a pressure of 150 pounds in applying the solvent and, while conflicting, the evidence supports the conclusion that this pressure was substantially greater than necessary for proper application of the solvent to the carrots, that the additional pressure caused a large amount of the solvent to form a cloud and drift onto the trees, and that the trees were damaged by the application of the solvent.

The greatest evidentiary conflict was in the testimony concerning the extent of damage caused by the application of solvent. The appellants introduced evidence tending to show that the damage to the trees could have been caused by improper irrigation, improper planting and soil conditions, or application of other herbicides to the trees. However, the jury apparently and impliedly resolved these conflicts in the respondents' favor and found that the trees were healthy prior to January 9th and that the damage was caused by the application of the solvent by Murray on that date.

There was also ample evidence to support the conclusion that both Murray, through its agent Mr. Wright, and Oxnard through its agent and manager Mr. Numes, and its president Mr. Smith, knew of the physical layout of the Hanson ranch, specifically, that the carrots to be sprayed were in rows between the orange trees.

On appeal, Murray has initially argued that the giving of a res ipsa instruction was error. The basis of this contention is that under the evidence the damage to the trees could have been caused by several agencies other than appellant Murray's acts and that Murray had no control over these agencies. However, the instruction given was that only in the event the jury found (1) that the trees were damaged by the spray, (2) that the accident was of the kind that ordinarily does not occur in the absence of someone's negligence, (3) that the accident was caused by an instrumentality ex-

clusively in Murray's control and (4) that the accident was not due to any voluntary action or contribution on the part of the plaintiffs, then the doctrine of res ipsa loquitur could be applied. The jury has the function of deciding, in case of such a controversy, as is here found, whether the facts warrant the hypothesis upon which res ipsa is based (*Seneris* v. *Haas*, 45 Cal.2d 811, 823 [291 P.2d 915, 53 A.L.R.2d 124] ; *Reynolds* v. *Natural Gas Equipment, Inc.*, 184 Cal.App.2d 724, 736 [7 Cal.Rptr. 879] ). Under the instruction given, the jury was properly required to resolve the question of whether the conditions necessary to bring the rule into operation were present.

■ Murray next contends that it was error not to extend the res ipsa instruction to Oxnard. While it is true that res ipsa may, under the proper circumstances, be applied against two defendants where there is joint control of the instrumentality which caused the damage, the appellant Murray may not complain. If it was proper to give the instruction as to that appellant, the fact that it also might have been proper as to appellant Oxnard is of no prejudice to Murray. The jury was required to find an exclusive control of the instrumentality with Murray before they could apply res ipsa at all. The extension of the instruction to Oxnard would not have changed this implied finding of Murray's exclusive possession. Since the res ipsa instruction was proper, there was no error in refusing to give an instruction on "the mere happening of an accident." (*Guerra* v. *Handlery Hotels, Inc.*, 53 Cal.2d 266, 270-273 [1 Cal.Rptr. 330, 347 P.2d 674] ; *Smith* v. *Sugich Co., Inc.*, 179 Cal.App.2d 299, 310 [3 Cal.Rptr. 718].)

■ Finally, Murray contends that it was error to instruct on implied warranty without limiting the issue to Oxnard. This rests upon the assumption that Murray did not sell or furnish the spray solvent. As we have previously indicated, the respondent Mark Hanson testified that Murray's agent procured the order and the Oxnard people's testimony was substantially to the same effect. Assuming that Murray was the seller of the solvent, and the evidence amply supports such an assumption, and recalling that the layout of the orange grove was known to Murray's employee, it becomes apparent that the provisions of the Sales Act relating to breach of warranty are directly applicable. Section 1735, subdivision (1) of the Civil Code provides that "[w]here the buyer, expressly or by implication, makes known to the seller

the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment . . . , there is an implied warranty that the goods shall be reasonably fit for such purpose.'' The warranty is breached if the product is, in some manner, not suitable for the intended use. (*Odell* v. *Frueh,* 146 Cal.App.2d 504, 509 [304 P.2d 45].)

In the same connection, Murray argues that the Stoddard solvent was fit for the intended use and that it did not cause the damage to the respondents' trees. The instruction on warranty was a proper one under the circumstances here. The appellant's argument goes to the weight of the evidence, a question of which the jury was the ultimate arbiter and which the jury resolved in the respondents' favor. We cannot reweigh the evidence and substitute our judgment for that of the jury. (*Chase* v. *Chase,* 156 Cal.App.2d 540, 542 [319 P.2d 670] ; *Holland* v. *Morgan & Peacock Properties Co.,* 168 Cal.App.2d 206, 209 [335 P.2d 769].)

Appellant Oxnard Seed Company contends first that there was no evidence establishing actionable negligence on its part, there being nothing to show that injury to the respondents' trees was foreseeable by it. It next is argued that there was no duty breached and no proximate cause between its conduct in supplying the solvent to Murray and the injury to the trees even assuming that it was the use of the solvent at excessive pressure that caused the injury. The appellant Oxnard also contends that the evidence failed to establish the breach of implied warranty.

The evidence clearly supports the implied findings (1) that Oxnard was a seller of the goods, whether in concert with Murray or by itself; and (2) that Oxnard, through its manager and president, knew of the physical arrangement of the Hanson ranch, and, specifically, that the carrots requiring the application of spray were in rows between the rows of young orange trees. Furthermore, Oxnard billed plaintiffs for the solvent after it had been applied. Thus it is apparent that the instant situation is not, as Oxnard contends, one where the goods were used in an unforeseen manner (*Simmons* v. *Rhodes & Jamieson, Ltd.,* 46 Cal.2d 190, 194 [293 P.2d 26] ; quicklime-based cement applied by plaintiff without protection for skin) or where the goods were within the buyer's control for a considerable period of time after the actual sale, thus negating the possibility that the goods were defective at delivery (*Trust* v. *Arden Farms Co.,* 50 Cal.2d 217, 222 [324 P.2d 583] ; milk bottle delivered to plaintiff's

porch and thereafter carried to refrigerator and moved several times prior to breaking and causing the plaintiff's injury). The company understood that the spray was for *carrots located in close proximity to orange trees.* The implied warranty must include such a term. It therefore remains only to be seen whether or not there is any evidence to support the implied finding that the Stoddard solvent was not "reasonably fit for such purpose." (Civ. Code, § 1735, subd. (1).)

The jury was instructed that "[w]hen the conditions exist giving rise to an implied warranty that the substance sold is reasonably suitable for the purpose for which it was purchased, the warranty is breached if the substance is not in fact reasonably suitable for such purpose. Under such circumstances absolute liability for damages proximately caused by the breach exists irrespective of whether or not the seller was negligent."

There was direct and unrebutted evidence, presented in part by the appellants themselves, that Stoddard solvent had a deleterious effect on orange trees.[1] Such evidence, however, conducted as it was under controlled conditions, could not foreclose the jury from finding, as it implicitly did, that the solvent was the ultimate cause of the death of the young trees. There was also evidence that a certain amount of pressure was required in applying the spray and that the purpose of the pressure was to cause the solvent to strike the ground with force, then rise or bounce and form a cloud or mist. Certainly Oxnard knew, through its manager and its president, or should have known, that in a normal spraying operation, a certain portion of the solvent would come in contact with the trees. The evidence supports the implied finding that the solvent was not reasonably fit for the purpose for which it was sold, that is, spraying carrots between rows of young citrus trees, where there was no instruction or *caveat* that the solvent had to be used with such care as to avoid contact with the citrus trees, although Oxnard had knowledge of the exact place where its solvent was to be used.

Failure to warn either Murray or the respondents of the danger under these facts was both actionable negligence and

---

[1]The appellants' expert testified that he performed a hot-house experiment by spraying Stoddard Solvent directly on young orange trees. While the trees did not die and eventually regained health, he observed that "the young flush growth was burned, blackened . . . and some of the very small twigs were blackened and killed back to the bud. . . . Some of the older leaves dropped."

the factor which caused the warranty to be breached. The existence of negligence does not obviate the possibility that a warranty was breached and it is clear that the same operative facts can, under proper circumstances, give rise to both causes of action. We believe that such circumstances exist here.

The basic thrust of the arguments presented by both appellants is directed toward the evidence with the contention that it does not support the verdict. Certainly the testimony was in conflict throughout the case. Reasonable men might have differed in the result. ▓▓▓ It may afford no solace to the appellants, but we can only refer them to the often repeated rules of appellate evidentiary review, as enunciated in *Crawford* v. *Southern Pacific Co.*, 3 Cal.2d 427 at page 429 [45 P.2d 183] : "In reviewing the evidence on such an appeal all conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. ▓▓▓ It is an elementary, but often overlooked principle of law, that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. ▓▓▓ When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court."

Judgment affirmed.

Fox, P. J., and Ashburn, J., concurred.