**Kirby Reid REDDICK and Marjorie Reddick Oglesby, Petitioners,**

**v.**

**WHITE CONSOLIDATED INDUSTRIES, INC., Respondent.**

**Nos. 1374–1376, 1383, 1385.**

United States District Court
S. D. Georgia,
Augusta Division.

Dec. 13, 1968.

Supplemental Opinion and Order
February 24, 1969.

Congress on the inhabitants of the Virgin Islands, and the proceeds of all quarantine, passport, immigration, and naturalization fees collected in the Virgin Islands, less the cost of collecting all of said duties, taxes, and fees, shall be covered into the treasury of the Virgin Islands, and shall be available for expenditure as the Legislature of the Virgin Islands may provide: *Provided*, That the term 'inhabitants of the Virgin Islands' as used in this section shall include all persons whose permanent residence is in the Virgin Islands, and such persons shall satisfy their income tax obligations under applicable taxing statutes of the United States by paying their tax on income derived from all sources both within and outside the Virgin Islands into the treasury of the Virgin Islands. * * *" 48 U.S.C. § 1642.

Tom M. Odom and Florence H. Dendy, Millen, Ga.; George W. Fryhofer, Waynesboro, Ga. for plaintiffs.

A. Rowland Dye, Augusta, Ga. for defendant.

## ORDER OF COURT ON MOTIONS TO DISMISS

LAWRENCE, District Judge.

These cases grow out of asphyxiations caused by an improperly installed vent connected with a gas heater manufactured by the defendant. Motions to dismiss are addressed to each of the four counts.

The arguments center on the first negligence count, Count I, in which it is alleged that the installer (an independent contractor) read and followed the manufacturer's manual of instructions which came with the packaged appliance. It is claimed that the instructions were wanting both as to completeness and as to necessary warnings. Plaintiff insists that the manual should have embodied recommended instructions of the American Gas Association in respect to installation of gas appliances and piping. Among these are a warning against horizontal runs of pipe under a house greater than 75% of the height of pipe on the outside of the house and use of uninsulated pipe where same is exposed to the cold.

The night after the installation was extremely cold. The complaint states that that fact combined with the improper downward pitch of the vent from the appliance through the floor, the lack of pipe insulation and the long horizontal run of the piping under the house produced a "scientific phenomenon" known as "plugging". So installed, when outside temperatures drop the vent will "plug" with the result that the heater burns improperly and produces carbon monoxide.

Defendant moves to dismiss the actions on the ground that the installation and Operating Instructions were adequate. Its counsel argue that the proximate cause of the asphyxiation was the independent act of the installer in pitching the vent downward at the heater. They point out that the manual cautions against use of "elbows" and that it states that "horizontal runs of flue pipe should be pitched upwards toward the chimney at least ¼ inch per foot of horizontal run".[1] As to the adequacy of the instructions defendant says that it is a universal law of physics that "heat rises" and that the Court should take judicial cognizance of this truth in ruling that no specific caution was necessary concerning vertical downward pitch of the venting.

To all this plaintiff replies that the manual nowhere instructs the installer not to go downward vertically through the floor and then run horizontally on the upward angle specified. Plaintiffs' counsel point out that judicial knowledge does not extend to facts which are not included within universal common knowledge and experience. Rowe v. State, 15 Ga.App. 660, 84 S.E. 132.

When any carbon-containing fuel, such as manufactured or natural gas, is burned in the absence of sufficient oxygen or whenever, for any reason, combustion is incomplete, carbon monoxide will be formed. Odorless, colorless and tasteless, it is the perfect asphyxiant, a subtle, lethal gas that enters the lungs and excludes oxygen from the body by virtue of its combination with hemoglobin. "Ordinary care as to a thing which is subtle, violent and dangerous, such as gas and electricity, may require a greater degree of caution than does an agency which lacks these dangerous properties." Womack v. Central Georgia Gas Company, 85 Ga.App. 799, 803, 70 S.E.2d 398, 403.

"Where a manufacturer of a chattel undertakes by printed instructions to advise of the proper use to be made of the chattel, he assumes the responsibility of giving accurate and adequate instructions with respect to dangers inherent in its use in some other manner." Hartmon v. National Heater Company (1953), 240 Minn. 264, 60 N.W. 2d 804. See also Lovejoy v. Minneapolis-Moline Power Implement Co. (1956), 248 Minn. 319, 79 N.W.2d 688. A supplier of a chattel is under the duty to inform those expected to use the equipment of facts which make it likely to become dangerous. J. C. Lewis Motor Co., Inc. v. Williams, 85 Ga.App. 538, 69 S.E.2d 816; Restatement of the Law, Torts 2d, § 388, p. 300f.

It is, of course, quite conceivable that the formation of lethal gas was proximately and solely caused by the original

1. Apparently, the horizontal run beneath the house was pitched upward in this manner.

downward vertical run of the piping and that such method of installation ignored the simple law of physics that hot air is lighter than air of cooler temperature and therefore rises. Under the circumstances, a jury might conclude that no explicit warning or instruction was required and that the installer's breach of so plain a physical law was an intervening cause relieving the defendant of liability for any shortcomings in its manual.

However, the complaint not only indicates that this is a deceptive simplification of complicated matters but also tells me that the vertical downward run of the piping was only a concurrent or contributing cause to the tragedy on the early morning of January 17, 1968. To me the danger is not so obvious as to obviate a warning by the manufacturer or fuller instructions.

■ Assuming the allegations of the complaint should be proved, a jury could find that the instructions were incomplete or inadequate and that such dereliction amounted to want of the degree of care required of the manufacturer. It could also find that it was negligence not to give a specific warning as to the importance of venting as related to the possibility of carbon monoxide being produced in the heater.[2] The jury must determine whether such omissions were causally connected with the fatalities. The motion to dismiss Count I is overruled.

### Count IV

I will comment first upon the motion to dismiss as to Count IV. This Count adopts the negligence allegations of Count I and adds allegations as to lack of due care in "designing" the manual by not including adequate warnings and instructions and alleges that the appliance constituted a dangerous instrumentality which was not reasonably suited for the purpose intended.

■ I cannot find any real difference between the two negligence counts. Paragraphs 28–31 of the first Count (except for the allegation as to being "reasonably suited") seem to cover the added subject matter of Count IV. The difference is about the same as that between seraphim and cherubim. Certainly it is insufficient to warrant my letting both counts go to the jury. I will not dismiss Count IV but will strike it as surplusage and as a mere elaboration of Count I. However, if counsel for plaintiff feel that there is a difference of substance I will entertain an amendment adding the matter to Count I. However, I will not permit undertones of implied warranty in a negligence count.

### Counts II and III

Count II is based on alleged breach of an implied warranty that the vented gas heater is safe if installed according to the manual and Count III on alleged breach of express warranty by defendant that the heater, for one year, is warranted "to be free from defects in material and workmanship under normal use and service".

In dealing with warranties, express and implied (Sec. 109A–2—313 and 315) the Commercial Code speaks of "goods" and (Sec. 109A–2—105) defines them in terms of physicality. I question whether the sale of a gas appliance includes the accompanying manual of instructions. I doubt also whether a defective manual can be the subject of an implied warranty. It is true that as defined in the Commercial Code an express warranty is an affirmation which relates to the goods and which "becomes part of the basis of the bargain". However, I do not think that Sec. 109A–2—313 goes beyond the physical goods and includes freedom from defect of the manual. Nor do I conceive

2. Warnings and instructions are not necessarily the same. The former call attention to danger; the latter prescribe procedures for efficient use and for avoiding danger. A manufacturer might provide one and still be liable in failing to provide the other. Boyl v. California Chemical Company, 221 F.Supp. 669 (D. C.1963).

that the sale of the vented heater carried any implied warranty as to fitness for use of the manual. Incidentally, the express warranty excludes "improper installation".

My feeling is that the sufficiency of instructions or the adequateness of warnings are necessarily matters of negligence under general tort law and are not the subject of warranty, express or implied. However, I am not foreclosing argument on Counts II and III. There are objections pending as to interrogatories and the warranty issues can be argued at the same time, orally or by brief.

## OBJECTIONS TO INTERROGATORIES

■ As to the objections to certain interrogatories, I am aware of the line of decisions to the effect that evidence of post-injury precautionary measures is not admissible and is contrary to public policy. See Flint River Cotton Mills v. Colley, 71 Ga.App. 288, 290, 30 S.E.2d 426; Lacy v. City of Atlanta, 110 Ga. App. 814(4), 140 S.E.2d 144. An exception to this general rule occurs where the subsequent precautionary acts of defendant are relevant to some other issue than that of defendant's liability and negligence. Cf. Great Cosmopolitan Shows v. Petty, 7 Ga.App. 236(2), 66 S.E. 624.

I have one other observation concerning the interrogatories. Does Rule 33 permit me to sustain objections because of the irrelevance of the answers at the trial under circumstances where such information may be germane to the *subject matter* of the litigation as distinguished from the *issues*? In this connection see Dimenco v. Pennsylvania R. Co., D.C.Del. 1956, 19 F.R.D. 499; Bogaev v. Murta,

Appleton Co., D.C.Pa.1955, 18 F.R.D. 437; Bergen Rambler, Inc. v. American Motor Sales Corp., D.C.N.J.1962, 30 F.R. D. 334. On the other hand, where such an objection is made on a motion to produce it has been held that the changes made in a machine after the injury are not a proper subject of discovery. Hammill v. Hyster Company, D.C.Wis.1967, 42 F.R.D. 173, 174.

## SUPPLEMENTAL OPINION AND ORDER

### Count IV

On further argument of this case, counsel for plaintiff contend that Count IV is significantly different from Count I because it involves a distinct theory of tort liability. I will therefore reexamine the conclusion originally. and tentatively arrived at in respect to striking Count IV as merely repetitive of the first count.

Count I is based on general tort law. It alleges negligence in the failure of the manufacturer to instruct and warn the consumer concerning proper installation of the piping.[1] Count IV, which likewise sounds in tort, repeats the allegations of Count I and goes on to assert that because of the inadequate manual of instructions the heating appliance was not reasonably suited to the use intended. This theory of liability is based on an Act passed by the Georgia Legislature in 1968. See Code § 105–106. That statute provides that a manufacturer is liable in tort, irrespective of privity, to any natural person who consumes or may be reasonably affected by the property sold and who suffers injury by reason of the product not being reasonably suited to the use intended.

[1]. Since I originally dealt with this case, the decision in Wallinger v. Martin Stamping and Stove Company, 93 Ill. App.2d 437, 236 N.E.2d 755 has come to my attention. The syllabus states, "Evidence that four page instruction pamphlet supplied by manufacturer with gas space heater stated that heater should be installed by a licensed gas appliance installer but did not include any reference to proper height of vent pipe or to consequences of failing to elevate vent pipe to an appropriate height above peak of roof, except in so far as cutaway drawing related thereto, presented question for jury as to whether manufacturer was negligent with respect to death caused by carbon monoxide poisoning resulting from failure to extend vent pipe beyond peak of roof."

A glance at the background of the statute in question is proper. In 1957 the Legislature passed an act creating an implied warranty in sales by a manufacturer to an ultimate consumer in respect to reasonable suitability and merchantability of the property sold. See Ga.Laws, 1957, p. 405. When the Uniform Commercial Code was adopted in 1962 this statute was expressly repealed. Ga.Laws, 1962, pp. 156, 428. The governing statutory law as to breach of warranty resulting in damage to consumers became § 109A–2—318. Under it, the warranty extends to natural persons in the family or household of the buyer reasonably using or affected by the goods who are injured or damaged by breach thereof.

With the apparent object of expanding the class of natural persons entitled to sue in tort and to broaden the protection afforded to consumers under tort law the General Assembly amended Code § 105–106 in 1968. See Ga.Laws, 1968, pp. 1166f. The new statute (§ 105–106) provides that a manufacturer is liable in tort "to any natural person who may use, consume or reasonably be affected by the property and who suffers injury to his person or property" because the property sold was not merchantable and reasonably suited to the use intended.

In an article entitled "Georgia's New Statutory Liability for Manufacturers: An Inadequate Legislative Response" Professor E. Hunter Taylor refers to the numerous "weaknesses" in the drafting and coverage of the statute and states:

"While abolishing the privity requirement, it does not expressly do away with the requirement of negligence. As previously stated, lack of privity for many years has not been fatal to a tort action by a consumer against a product's manufacturer. On the other hand, under traditional tort principles, a failure to show negligence has been fatal. If the major innovation intended by the legislative action was the adoption of a strict liability theory of manufacturer's liability, then it is strange that a statement was included to make clear that lack of privity—which has not been a real problem in the tort area for many years—is no bar to recovery, while no mention is made that a showing of negligence will not be required. Certainly, it seems implicit in the section that negligence need no longer be shown as a requisite to recovery in tort, However, it is not unforeseeable that a court could interpret section 105–106 as abolishing the privity requirement yet at the same time providing that the consumer can maintain a tort action only after showing negligence. Such an interpretation, while contrary to the apparent intent of the draftsmen, is supportable not only by the literal language of the section but is also further reinforced by the heading of the section—'Privity to Support Action'—which was not altered by the amendment. To eliminate the possibility of ambiguity the amendment should clearly state that a showing of negligence is not mandatory." [2]

I dislike to venture into an exegetical thicket which the appellate courts of Georgia have not yet entered. In doing so, the fears of the author of the article quoted from as to what courts might hold as to strict liability and negligence under the 1968 statute are fully realized.

It is true that the amendment possesses implications of a strict liability theory. However, if the General Assembly intended that negligence is not a factor in products liability cases and if it meant to impose such liability where injury results from unfitness of a product for intended use or want of merchantability, it should have said as much. What the Legislature meant by what it said, not what it left unsaid but meant to say, should be the rule of construction here.

The portion of Count IV which alleges that the heater was not reasonably fit for the purpose and use intended is conceived in terms of negligent design of the

2. 2 Georgia Law Review (Summer, 1968), p. 550f.

manual. In all events, a jury in dealing with evidence under the first count must decide, in effect at least, whether the manufacturer breached the duty to exercise ordinary care in furnishing proper directions and to give adequate warning of danger and its resulting liability for selling a product thereby rendered unfit for the use intended.

■ Concluding that there is no basic difference between Count I and Count IV, I adhere to my original view that the latter is supererogatory and should be stricken.

### The Warranty Counts

When this case was originally argued counsel dealt only with the negligence count. Count II and III allege breach of warranty, implied and express. In the original opinion I suggested that the question of adequate directions and warnings in the instruction manual might be matters of negligence law rather than the subject of warranties under the Uniform Commercial Code.

Plaintiffs insist that there was breach of warranty, express and implied. They contend that the heater though merchantable and fit itself became unsuited for the use intended because of inadequate instructions and lack of appropriate warning by the manufacturer as to the dangers of faulty installation. Defendant says that "goods" as used in the Uniform Commercial Code do not include literature that accompanies them and maintains that no implied warranty was involved since it was neither selling nor warranting the manual.

■ The issue can be simplified at the outset by eliminating the express warranty and the inadequate warning phase of the problem. There was no express warranty as to the explicitness and completeness of the written instructions which accompanied the packaged appliance. The only express warranty contained in them was that the heater would be free of defects of material and workmanship for one year of normal use. Lack of adequate warning by a seller concerning the danger of carbon monoxide gas being produced by faulty venting may create liability under the general law of negligence but the manufacturer's failure to warn the consumer is not, as I see it, a breach of implied warranty.[3]

■ Elimination of these aspects of the warranty problem leaves the far more troublesome question of the relation of the implied warranty provisions of Article 2 of the Code of inadequate or incomplete written directions by a seller. The language of Article 2 does not afford much help. Nowhere is there anything dealing, in terms, with instructions by a seller as to use or installation. It is true that labels are mentioned in § 2–314(e) in which it is provided that to be merchantable goods must be "labeled as the agreement may require." In defining "label" under the Food, Drug, and Cosmetic Act the product and related pamphlets have been held to be integrated even though sent to retailers separately. United States v. 24 Bottles "Sterling Vinegar & Honey, etc.", 2 Cir., 338 F.2d 157. In the Official Comment under the Commercial Code it is pointed out that the label provision "applies only where the nature of the goods and of the transaction require a certain type of * * * label." It is also said that an obligation is imposed under Article 2 "not to deliver mislabeled articles." If "there is in fact a label, it must be truthful * * *."

3. In Frumer and Friedman, 1 Products Liability § 805; 19.03 [2] [a] the authors have collected the decisions dealing with lack of proper warning by manufacturers. All of the cases arise in negligence with two exceptions. They are Hanson v. Murray, 190 Cal.App.2d 617, 12 Cal.Rptr. 304 in which it was said that the failure to warn may be both actionable negligence and the factor which causes the warranty to be breached; and Hamon v. Digliani, 148 Conn. 710, 174 A.2d 294 where the Supreme Court of Errors of Connecticut extended the statutory warranty to include a representation that the product (a detergent) contains no harmful ingredient "of which due and ample warning has not been given."

1 Anderson's Uniform Commercial Code, 2–314:8. Neither the language of the Code nor the Official Comments convince me that any *label* is involved in the present case, or that the sales bargain required one, or that an instruction manual is a label within the meaning of § 2–314. While the Code is to be liberally construed (109A–1–102), the minuteness and specificity and the care used by the drafters in attempting to foresee every contingency does not justify broad interpretation in respect to equation of labels with instructions. I feel that precisionists would have been more precise.

I am satisfied, however, that under the warranty provisions of the Code where a product is sold which is to be installed by the consumer the written instructions that accompany the appliance create an implied warranty that it will be fit for the ordinary purpose for which it is used and will be safely operable when installed in accordance with such directions.[4] The Fifth Circuit Court of Appeals has said that instructions accompanying a product (cosmetics) are "an integral part of the warranty." Helene Curtis Industries, Inc. v. Pruitt, 385 F.2d 841, at 856. See also Procter & Gamble Manufacturing Company v. Langley (Tex.Civ.App.), 422 S.W.2d 773.[5]

 If a manufacturer furnishes instructions as to the manner in which a product is to be used, the consumer is entitled to think that so used it will not injure him. There is an implied warranty that the goods are fit for that particular use. Conversely, a manufacturer furnishing instructions for the use of the product is warranting the same for that particular purpose and use and no other. This is especially true where, as in the present case, the appliance sold become dangerous if used improperly. The nature of the product in this case is such that compliance by the purchaser with the instructions concerning use is necessary to maintenance of an action for breach of warranty. See Procter & Gamble Manufacturing Co. v. Langley, *supra*, where it was said that plaintiff's violation of "plain instructions" was a misuse of the article sold and a defense to an action by the consumer. Also Helene Curtis Industries, Inc. v. Pruitt, *supra*, where the Court pointed out that the instructions which became an integral part of the warranty were to "be strictly followed." *ibid.*, 856.

 The installation instructions by defendant provide that horizontal runs of the flue pipe should be pitched upward at a certain angle. It seems to me that an installer of the venting would take this to mean that the piping should commence its upward run from the heater itself and not from some other point. However, to satisfy the implied warranty as to merchantability created by a manufacturer's instructions the latter should be sufficiently explicit, complete and unambiguous so as not to result in injurious non-conforming use by ordinary consumers. In my opinion, whether or not the defendant's manual measured up to this requirement and breached any such warranty presents a jury question under the allegations of the complaint.

I will therefore overrule the motion to dismiss Count II and leave the implied warranty issue in the case. At the trial, another look can be taken of this question in the light of the evidence presented.

*Objections to Interrogatories*

 Several interrogatories filed by plaintiff seek information as to changes that may have been made in defendant's manual of instructions since the fatalities involved in this litigation. As pointed out in my original order, such evidence contravenes public policy and is not admissible. No basis for any exception to the general rule appears here. The interrogatories in question cannot rea-

---

4. It is unnecessary to pass upon the legal effectiveness of the disclaimer made by the defendant as to "improper installation" of the appliance.

5. In each of these cases failure by the consumer to follow instructions precluded recovery for breach of implied warranty.

sonably lead to discovery of admissible evidence. The objections are sustained in each instance.

Interrogatory 32 asks for the names of all witnesses whom defense counsel plan to call at the trial. Defendant has previously answered as to persons having knowledge of the subject matter of the litigation. The better rule seems to be that parties are not required in advance of trial to state what witnesses will be used. See 4 Moore's Federal Practice, 2d ed., § 26–19(4). The objection to Interrogatory 32 is sustained.