Filed 4/25/23  Jason v. Pardini CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| TRENT JASON,<br><br>        Plaintiff and Appellant,<br>v.<br>MARK AUGUST PARDINI et al.,<br><br>        Defendants and Respondents. | A165974<br><br>(Mendocino County<br> Super. Ct. No. 22CV00306) |

Representing himself, plaintiff Trent Jason filed a lawsuit against defendants Mark Pardini and James Purcell after the clothes washing machine he purchased at Pardini Appliance stopped working.  Defendants offered to replace Jason's washing machine, but he rejected their offer and insisted they repair it instead because he was concerned he would then no longer have the benefit of an ongoing warranty.  In his 82-page verified first amended complaint, Jason asserted multiple claims based on storefront window lettering that read: "HOME OF THE 10 YEAR WARRANTY* ON ANY APPLIANCE OVER $499 OR MORE" with the asterisk phrase "*MAJOR COMPONENT WARRANTY" in smaller letters below.  He claimed that this sign created an express warranty to repair his appliances if they failed.  He also alleged that defendants misrepresented the products as "General Electric" appliances because General Electric Appliances had been

1

acquired by Haier, despite also alleging that Haier owned the right to use this name.

Defendants demurred. They explained that Jason was provided (1) a one-year warranty from the manufacturer; and (2) a 10-year limited warranty from Associated Service Corporation (ASC) that covered the main drive motor of the machine. Defendants argue that the storefront window referenced both the manufacturer and ACS warranties; the window was not a separate express warranty to repair any of Jason's appliances if they failed within 10 years after his purchase.

The trial court issued a short order sustaining defendants' demurrer without leave to amend. The record before us does not include a reporter's transcript of the hearing. In this appeal, Jason argues his amended complaint should have survived demurrer. While the trial court ought to have articulated its reasoning as to Jason's claims in its written ruling, rather than issuing a bare-bones order lacking any discussion, we disagree with Jason and will affirm.

## BACKGROUND

Jason purchased a front load washing machine, dryer, and dishwasher from Pardini Appliance in 2019. Each appliance had a "GE" trademark and "GE Appliances" sticker with model and serial numbers. Defendant Mark Pardini owns the store, and defendant James Purcell is the sales manager who assisted Jason with the purchases. As noted above, at the time of these purchases, the storefront window of Pardini Appliance had lettering that read: "HOME OF THE 10 YEAR WARRANTY* ON ANY APPLIANCE OVER $499 OR MORE" with the asterisk phrase "*MAJOR COMPONENT WARRANTY" in smaller letters below. Jason paid over $499 for each of the three appliances.

Jason alleged, "Purcell spent relevant time representing to Plaintiff that he was an expert in the appliance sales business, and that he represented to Plaintiff that these alleged General Electric appliances were the best on the market, and that they were known to last twenty years, or more; and this is what Defendant Pardini was offering a ten years extended warranty on all appliances sold for $499 or more." He further alleged, "It was this specific inducement which caused consumers, including Plaintiff, to rely on these extended warranties in making purchases of appliances from Pardini and Purcell." Jason continued, "In addition, with Purcell as the sole sales manager, he also verbally confirmed that written warranty to Plaintiff, ensuring [*sic*] to Plaintiff that if any appliance which Plaintiff purchased at this commercial business location, these purchased appliances included that extended ten years duration warranty, beyond any written warranty which the manufacturer provided."

Jason repeatedly referred to the window sign in his complaint as "the written representation" of defendants' alleged 10-year warranty on the appliances he purchased. Jason also alleged that those appliances each had a removable sticker on it saying, "limited warranty." But the amended complaint contained other allegations regarding warranties provided to Jason. First, Jason alleged that he received a one-year manufacturer's warranty. A copy of the appliance manual describing this warranty was attached as an exhibit to the amended complaint.

Second, Jason alleged that he received a 10-year written warranty from ASC titled " 'ADDITIONAL EXTENDED LIMITED WARRANTY' " that covered one itemized component in each appliance. A copy of a postcard addressed from ASC to Jason and dated June 2, 2020 was attached as an exhibit to the amended complaint. The postcard states that "[i]f at any time

3

after the expiration of the manufacturer's limited warranty, but NOT MORE THAN TEN (10) YEARS AFTER THE DATE OF PURCHASE OF THIS APPLIANCE, the component as specified under this certificate should become defective, except as stated below, you will be entitled to receive free of charge a replacement component of the same or substantially the same quality as the original manufacturer would have furnished during their limited warranty period." The component listed for a front load automatic washer is the "Main Drive Motor."

The amended complaint also attached other exhibits, including Jason's receipt for his purchases of the three appliances. Each of those receipts included text that read: "Federal Law provides that the Buyer shall give the Seller an opportunity to make necessary repairs to merchandise. Replacement will only be allowed under the terms of the manufacturer's warranty."

Jason alleged that his washing machine "failed to operate" 16 months after he purchased it. He believed the issue involved the "main bearing attached to the rear of the washing machine drum." Jason believed the manufacturer's warranty was no longer applicable, as it extended only one year from the date of purchase.

When Jason tried to contact General Electric Corporation about the "failure of the washing machine to operate," Jason says he "discover[ed] that General Electric Corporation was not the manufacturer of the washing machine. Instead, "after completing extensive research," Jason "discovered that on June 6, 2016, Qingdao Haier Company, Limited, a Shanghai stock exchange listed company that is 41 percent owned by Haier Group . . . and General Electric Corporation had announced the signing of closing documents for the acquisition of General Electric Appliances . . . from General Electric

4

Corporation." Jason alleged that Haier owned the right to use the name "General Electric Appliances." The Haier acquisition of GE Appliances had taken place three years before Jason purchased his washer. Jason nonetheless alleged that, had he known that the appliances were made by a Chinese corporation, he would not have purchased them.

Jason contacted Pardini Appliance in June 2021, and a service technician came out to inspect his washing machine. According to Jason, the technician prepared a $1,400–$1,600 estimate for the repair and had Jason sign it, but did not give Jason a copy. The technician gave Jason a service invoice indicating that the issue was "possibly main bearing or motor bearing."

Jason alleged that he was contacted by Pardini in July 2021, who indicated that GE would replace his washer and provide a one-year warranty. Jason rejected the offer and explained that he wanted the 10-year warranty he believed Pardini had provided him. He wanted Pardini to repair the machine, instead of replacing it. Jason claimed his flooring had been damaged by the original installation and so, by his reasoning, presumably the floor might get damaged again if the machine was replaced instead of repaired. Pardini Appliance subsequently indicated it would "not be taking any actions on [Jason's] behalf."

Jason filed a lawsuit against Pardini and Purcell.[1] The verified first amended complaint sought two injunctions—one on behalf of Jason and the other on behalf of all others similarly situated under California's Unfair

---

[1] The service technician was also named as a defendant, but Jason later agreed to dismiss him.

Competition Law (UCL) (Bus. & Prof. Code, § 17200 et seq.).[2]  Jason also alleged causes of action for (1) breach of contract; (2) breach of implied covenant of good faith and fair dealing; (3) false promise; (4) deceit; (5) constructive fraud; (6) misrepresentation; (7) concealment; (8) violations of California's False Advertising Law (FAL) (§ 17500 et seq.); (9) violations of the Unfair Trade Practices Act (UPA) (§ 17000 et seq.); (10) collusion; (11) failure to provide written estimate for repairs; and (12) respondeat superior.  Defendants demurred.  They argued Jason lacked standing to seek injunctive relief on behalf of what amounted to a class.  They also argued that Jason failed to state any of his other claims as a matter of law.  Defendants moved to strike various portions of the amended complaint, including the petition for an injunction on Jason's own behalf.

The trial court sustained defendants' demurrer without leave to amend, and deemed the motion to strike moot.  The order does not detail the trial court's reasoning, and the record does not contain any reporter's transcript of the hearing.  Jason appealed.

## DISCUSSION

### I. Appealability and Standard of Review

Jason argues that his amended complaint should have survived demurrer.  We begin by addressing appealability.  The notice of appeal refers to a judgment of dismissal after this order, but the record contains no such judgment.  While an order sustaining a demurrer is "neither appealable per se nor as a final judgment," we may deem the order to incorporate a judgment of dismissal.  (*Molien v. Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916, 920.)  We will do so here in the interests of justice.

---

[2] Further undesignated statutory references are to the Business and Professions Code.

"In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) We review the amended complaint de novo to determine whether it "alleges facts sufficient to state a cause of action under any legal theory or to determine whether the trial court erroneously sustained the demurrer as a matter of law." (*Aguilera v. Heiman* (2009) 174 Cal.App.4th 590, 595.) We construe the amended complaint in a reasonable manner and assume the truth of properly pleaded factual allegations that are not inconsistent with other allegations, exhibits, or judicially noticed facts. (*Genis v. Schainbaum* (2021) 66 Cal.App.5th 1007, 1015.) We need not accept as true, however, contentions, deductions, or conclusions of fact or law. (*Blank*, at p. 318.) Jason bears the burden of demonstrating that the trial court erred. (*Aguilera*, at p. 595.)

With this framework in mind, we analyze Jason's arguments across five categories in the amended complaint: (1) requests for injunctive relief; (2) breach of contract claim; (3) FAL and UPA claims; (4) claims sounding in fraud; and (5) other causes of action.

## II. Requests for Injunctive Relief

Jason's amended complaint included two "petitions" for injunctions. First, Jason sought an injunction requiring defendants to "comply with the terms and conditions of the contracts" related to the appliances Jason purchased, including the alleged 10-year storefront window warranty. Jason argues that the trial court wrongly included this request in its ruling because defendants did not demur to it. Defendants did, however, move to strike this particular request for relief, and so it was properly before the trial court. We therefore consider its merits. (Contra *In re Aaron B.* (1996) 46 Cal.App.4th

7

843, 846 [" 'A party is precluded from urging on appeal any point not raised in the trial court' "].)

Injunctive relief is a remedy—it is not a separate cause of action. (*Green Valley Landowners Assn. v. City of Vallejo* (2015) 241 Cal.App.4th 425, 433, fn. 8.) We agree with defendants that Jason's attempt to petition for injunctive relief as an independent claim for relief was improper. Jason is essentially seeking specific performance on what he alleges to be his contract with Pardini, and so striking Jason's improper "petition" for an injunction would not deprive him of a remedy, were he to prevail on his contract claim. We address Jason's contract claim below.

Second, Jason sought an injunction "on behalf of others similarly situated," which he defined to include consumers who had made an appliance purchase in the past four years that were also subject to the alleged 10-year storefront window warranty. Jason also sought reimbursement for consumers who had paid for service calls, parts, labor, or replacement appliances during that period. Citing the UCL, Jason alleged he could seek such relief "on behalf of consumers who were injured" because he was "one of those persons injured in the same manner as all those consumers similarly situated." Defendants demurred to this petition on the ground that Jason—a litigant representing himself and who is not a licensed attorney—cannot pursue claims on behalf of others. (*Drake v. Superior Court* (1994) 21 Cal.App.4th 1826, 1830 [explaining that since the passage of the State Bar Act in 1927, persons may not practice law for another in California unless they are active members of the State Bar].)

Jason argues that he is not attempting to pursue class claims. Rather, he contends he is seeking public injunctive relief as described in *McGill v Citibank, NA* (2017) 2 Cal.5th 945. The analogy is inapt. *McGill* explained

8

the difference between public injunctive relief—that " 'by and large' benefits the general public" and "benefits the plaintiff, 'if at all,' only 'incidental[ly]' and/or as 'a member of the general public' "—and private injunctive relief, which "primarily 'resolve[s] a private dispute' between the parties," " 'rectif[ies] individual wrongs,' " and "benefits the public, if at all, only incidentally[.]" (*Id.* at p. 955.) In other words, public injunctive relief under the UCL "has 'the primary purpose and effect of' prohibiting unlawful acts that threaten future injury to the general public." (*McGill*, at p. 955; see also *Vaughn v. Tesla, Inc.* (2023) 87 Cal.App.5th 208, 227.) "Relief that has the primary purpose or effect of redressing or preventing injury to an individual plaintiff—or to a group of individuals similarly situated to the plaintiff—does not constitute public injunctive relief." (*McGill*, at p. 955.)

The petition here falls into the category of private injunctive relief. It did not ask defendants to remove the window sign or rewrite it. Instead, it sought relief for a group of individuals alleged to have suffered the same injury: non-compliance with the 10-year storefront window warranty.

In sum, the petition sought an injunction on behalf of a subset of consumers, but Jason is foreclosed from pursuing such a remedy because he is representing himself and he is not an attorney. (*Drake v. Superior Court*, *supra*, 21 Cal.App.4th at p. 1830.) Given the availability of narrowly tailored relief that would stop the allegedly unfair business practices or false advertising at issue, Jason may not pursue what amounts to class-based relief without securing adequate representation. (*McGhee v. Bank of America* (1976) 60 Cal.App.3d 442, 450 [adequacy of representation depends upon whether attorney is qualified to conduct proposed class litigation].) We conclude the trial court did not err in sustaining defendants' demurrer to this petition for injunctive relief.

9

### III.  Breach of Contract Claim

Jason concedes, in his briefing on appeal, that his breach of contract claim is premised solely on the Pardini Appliance storefront window sign. The amended complaint did not allege any breach of the one-year manufacturer warranty or the 10-year limited ASC warranty, and does not describe any other contract.  Instead, Jason alleged that the storefront window sign was either the entire contract or was part of the contract for his purchase of the appliances.

Defendants argued on demurrer that Jason was only offered the manufacturer and ASC warranties.  They argued that the storefront window sign did not amount to a written warranty, as it did not attempt to comprehensively describe any such warranty.  On appeal, defendants argue that the storefront sign simply referenced the manufacturer and ASC warranties.  Jason responds that his allegations are sufficient at the pleading stage and that defendants cannot succeed on demurrer by offering a "competing" interpretation of the contract.

The law Jason relies upon does not support his contract claim.  The amended complaint primarily cites the Song-Beverly Consumer Warranty Act (Song-Beverly Act) (Civ. Code, § 1790 et seq.), which sets out the requirements for an express warranty for personal, family, or household consumer goods. (*Keith v. Buchanan* (1985) 173 Cal.App.3d 13, 19.)  Civil Code section 1793.1, subdivision (a)(1) states:  "Every manufacturer, distributor, or retailer making express warranties with respect to consumer goods shall fully set forth those warranties in simple and readily understood language, which shall clearly identify the party making the express warranties, and which shall conform to the federal standards for disclosure of warranty terms and conditions . . . ."  The amended complaint also cites

section 2313, subdivision (1)(a) of the Uniform Commercial Code, which provides: "Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."

Jason did not (and cannot) use the storefront window sign to sufficiently allege an express warranty for this claim. (See *Williams v. Beechnut Nutrition Corp.* (1986) 185 Cal.App.3d 135, 142 ["In order to plead a cause of action for breach of express warranty, one must allege the exact terms of the warranty"].) The sign objectively fails the requirements for a written warranty under section 1793.1 of the Civil Code. Even accepting the inference Jason advances that the word "HOME" *could* mean Pardini Appliance, the sign does not "clearly identify" the party making the alleged warranty. (Civ. Code, § 1793.1.)

Moreover, the word "HOME" establishes that the storefront sign is not itself an offer or a promise, but a marketing reference to the warranties being provided on appliances sold at the store. Nor does the storefront sign "fully set forth" the terms of a "third" warranty as Jason alleges. (Civ. Code, § 1793.1.) For example, the sign does not say what a "major component warranty" might actually entail. Most importantly, nothing in the sign supports Jason's claim that it created a warranty to *repair* a defective part in an appliance, rather than replace a broken appliance. Any claim that the sign is, by itself, an express contractual offer fails for the same reason. There is nothing suggesting any promise to repair, rather than replace, an appliance.

Indeed, the receipt attached to the amended complaint contains language that contradicts any such allegations. The text explicitly

11

contemplates "Replacement" of the machine under the terms of the manufacturer's warranty. We also note Jason contradicts his breach of contract allegations more generally in other parts of his amended complaint. In connection with the FAL claim, Jason alleged that defendants posted the storefront window sign "when in fact no ten years warranty was ever provided, or intended to be provided, to any of those customers who purchased those appliances, including those sold to Plaintiff," and "[t]here never was any ten years duration extended warranty on any of those appliances that these two named Defendants sold to Plaintiff[.]"

In sum, the statement "HOME OF THE 10 YEAR WARRANTY* (*MAJOR COMPONENT WARRANTY) ON ANY APPLIANCE OVER $499 OR MORE" is not an effort to set out a written warranty as required by section 1793.1 of the Civil Code; it is storefront marketing referring to general policy (Civ. Code, § 1791.2, subd. (c)), and does not obligate Pardini Appliance (or anyone else) to repair a defective part in an appliance, rather than replace the appliance. Jason's amended complaint details the 10-year limited warranty he actually received from ACS on the main drive motor component, which is entirely consistent with the "limited" warranty sticker on his machine.

On demurrer, a court may decline to accept a plaintiff's allegations regarding the terms of a written contract where the language of that contract " 'unambiguously negates beyond reasonable controversy the construction alleged in the body of the complaint.' " (*George v. Automobile Club of Southern California* (2011) 201 Cal.App.4th 1112, 1130.) We will do so here, and conclude the trial court did not err in sustaining defendants' demurrer to the breach of contract claim.

## IV.  FAL and UPA Claims

The amended complaint asserted that defendants' advertisement of the alleged storefront window warranty constituted a violation of section 17500 of the FAL and a violation of the UPA.[3]

As a preliminary matter, the amended complaint sought relief under sections 17070 to 17906 of the UPA (injunctive relief and monetary damages) but failed to allege any particular provision of the UPA violated by defendants' conduct.  Nor can we identify one.  (§§ 17040–17044 [prohibiting certain conduct related to locality discriminations, sales below cost, and loss leaders].)  But as Jason contends, he has both UPA and UCL unfair practices claims, and defendants demurred under the UCL, we also address the sufficiency of this cause of action under the UCL.

---

[3] Jason included additional allegations under his FAL cause of action— Pardini's fictitious business name paperwork with the California Secretary of State was somehow misleading, defendants advertised themselves as more knowledgeable about appliances than they really are, the Pardini Appliance Web site was misleading because it says the store was a "BrandSource Dealer of the Year" without details about the award and had "100% Customer Satisfaction" contrary to unidentified "Yelp" reviews—but explicitly disclaimed them as a basis for the claim because he did not rely on them and they did not cause him injury; they were instead "simply to show to the jury the depth of the fraud which [Pardini] has gone" to "defraud the general public" and "exploit the consumers' trust and confidence in his business activity."

Jason also included additional allegations under his UPA claim regarding defendants' alleged misrepresentation of Haier-manufactured appliances as "GE" appliances.  We conclude those allegations are insufficient to state a claim because they are contradicted by his allegation that Haier owned the right to use the name "General Electric Appliances."  (*Hendy v. Losse* (1991) 54 Cal.3d 723, 742–743 [verified complaint is vulnerable to demurrer when it " ' "contains allegations destructive of a cause of action" ' "].)

Section 17500 of the FAL provides, "It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, . . . any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or for any person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised." The UCL prohibits "unfair competition" and defines the term as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." (§ 17200.)

Defendants demurred to these two claims on the ground that California consumer protection statutes are governed by the "reasonable consumer" test and Jason's claims do not meet this test. We agree. Courts evaluate FAL and UCL "unfairness" claims using the "reasonable consumer test." (*Lavie v. Procter & Gamble Co.* (2003) 105 Cal.App.4th 496, 504.) In so doing, the court asks whether "a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be

14

misled." (*Id.* at p. 508.) While we must exercise caution and draw all reasonable inferences in Jason's favor at the pleading stage (*Kruss v. Booth* (2010) 185 Cal.App.4th 699, 713), we nonetheless conclude that the amended complaint cannot withstand even the barest scrutiny under this test. The amended complaint may be lengthy, but volume is not a substitute for substance.

We note at the outset that the parties appear to be mired in a debate about the characterization of Jason's claims: whether he alleges that the storefront window sign was a "limited" or "unlimited" warranty. Jason argues that he has always acknowledged the sign was a warranty limited to major components. That debate, however, is immaterial. The key question here is whether Jason has alleged sufficient facts to support his cause of action, such that a reasonable consumer seeing the sign could have understood it to provide him or her with the right to demand defendants repair an appliance if it broke over the next 10 years, rather than replace the machine with a new one.

The answer is no. As explained above, nothing about the sign suggests that a consumer is obtaining such a warranty or could force such a result. No reasonable consumer seeing it would purchase an appliance with the understanding that he or she could later reject a brand new machine and insist that the retail store instead repair the broken one. The reference to replacement in the purchase receipt, as well as the allegation that defendants attempted to honor whatever warranty existed for Jason's machine by replacement, support this conclusion. Nor do we see how a reasonable consumer would understand the store window sign, even accepting Jason's interpretation of the word "HOME," to create some warranty beyond the actual warranty issued by ASC warranty (consistent with the "limited"

15

warranty sticker on the machine). We again note that Jason's claims are undermined by his allegations that "no ten years warranty was ever provided" and "[t]here never was any ten years duration extended warranty on any of those appliances that these two named Defendants sold to Plaintiff[.]" Even at the pleading stage, it is apparent that no reasonable consumer would have the understanding Jason alleges he had under the circumstances alleged in his amended complaint.

We next address defendants' challenge to the UPA claim to the extent it was asserted on behalf of a class. While Jason disavows any class claim, the cause of action refers to "unsuspecting consumers" and seeks injunctive relief for all appliances sold for more than $499 in the past four years. It is unclear what sort of injunction Jason had in mind but, for the same reasons described above, Jason cannot pursue class claims under this cause of action as a litigant in pro. per. (See *In re Tobacco II Cases* (2009) 46 Cal.4th 298, 313 [persons pursuing representative actions for unfair business practices must satisfy class action requirements, including adequacy of representation].) To the extent he sought individualized relief, or an injunction that would simply address the allegedly unfair business practice at issue (e.g., by requiring Pardini Appliance to remove the warranty signage), Jason would have had standing if his claims could withstand scrutiny.

Finally, we note that Jason sought not only injunctive relief, but also monetary damages (including treble damages) and punitive damages through his FAL and UPA causes of action. Injunctive relief, directed at eliminating the alleged false advertising (the window sign), is available under section 17535 of the FAL. Monetary damages and penalties, however, are not available for a private litigant like Jason. (§§ 17535.5, subd. (b), 17536, subd. (a); *Colgan v. Leatherman Tool Group, Inc.* (2006) 135 Cal.App.4th 663,

16

695.) To the extent Jason asserts an unfair practices claim under the UCL, a plaintiff must have "suffered injury in fact and [have] lost money or property as a result of the unfair competition" in order to have standing. (§ 17204.) As a private litigant, Jason may recover restitution and seek injunctive relief (tailored to the alleged unfair business practice), but not damages or penalties. (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1144.)

In sum, we conclude the trial court did not err in sustaining defendants' demurrer to the FAL and UPA claims.

## V. Claims Sounding in Fraud

Defendants demurred to Jason's causes of action for false promise, deceit, constructive fraud, misrepresentation, concealment, and collusion on the ground that he did not and could not plead those claims with particularity. These claims rely on allegations related to two types of conduct: (1) defendants' alleged representation of Haier-manufactured appliances as "GE" appliances; and (2) defendants' alleged provision of the storefront window warranty.

The first type of alleged conduct is insufficient to support these claims because, as explained above, Jason acknowledges in the amended complaint that Haier owned the right to use the name "General Electric Appliances." It remains unclear how retailers like defendants would be exposed to liability based on GE Appliance's own branding. Moreover, Jason's claims regarding this conduct depend on the allegation that, had he known that the appliances were made by a Chinese corporation, he would not have purchased them. But the amended complaint does not allege any representation made to Jason by any defendant regarding the national origin of the washing machine he purchased, let alone any misrepresentation or false statement.

17

Jason's remaining allegations related to the storefront window are insufficient because these claims are all restatements of a claim for fraud. "In California, fraud must be pled specifically; general and conclusory allegations do not suffice." (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 645.) " 'Thus " 'the policy of liberal construction of the pleadings . . . will not ordinarily be invoked to sustain a pleading defective in any material respect.' " ' " (*Ibid.*) As a preliminary matter, Jason's fraud claims require him to allege that defendants made a representation that was false or untrue, or that he was deceived by a representation through concealment of some material facts. (See, e.g., *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 973 [" ' "Promissory fraud" is a subspecies of fraud and deceit. A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud' "]); *Thrifty-Tel, Inc. v. Bezenek* (1996) 46 Cal.App.4th 1559, 1567 [misrepresentation element of fraud may be made in writing, orally, or implied by conduct]; *Boschma v. Home Loan Center, Inc.* (2011) 198 Cal.App.4th 230, 248 [action for fraud and deceit based on concealment requires defendant to have concealed or suppressed a material fact he or she was required to disclose]). Jason attempts to allege these elements through the storefront window sign. We are not persuaded that Jason has satisfied this pleading standard because, as explained above, the language of the sign—including its lack of exact terms and use of the words "HOME OF"— did not convey a separate promise or offer. It is unclear how Jason can sufficiently plead a *misrepresentation* without sufficiently pleading that the storefront window sign constitutes the *representation* he tries to infer.

18

Moreover, the amended complaint offers only bare conclusions regarding defendants' purported intent to induce Jason into believing they were providing him with a warranty to repair they would not honor (or that did not exist, as Jason suggested in his FAL allegations). Jason simply concludes that defendants "practiced a deceit with the intent to defraud." This also fails the standard of pleading with particularity.

While a claim for constructive fraud pursuant to Civil Code section 1573 does not require fraudulent intent, it does require the existence of a fiduciary relationship between the parties. (*Younan v. Equifax Inc.* (1980) 111 Cal.App.3d 498, 516, fn. 14.) A claim for fraudulent concealment also requires the existence of a legal duty to disclose the concealed fact to the plaintiff. (*Boschma v. Home Loan Center, Inc.*, *supra*, 198 Cal.App.4th at p. 248.) Jason has not and cannot allege the existence of such a legal relationship here. The trial court did not err in sustaining defendants' demurrer to the FAL and UPA claims.

### VI. Other Causes of Action

We conclude there was no error in sustaining defendants' demurrer as to any of Jason's three remaining causes of action.

First, defendants demurred to the claim for breach of the implied covenant of good faith and fair dealing on the ground that it was superfluous to the breach of contract claim. "If the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." (*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1395.)

19

Jason appears to argue that the two claims are brought under different grounds, but does not articulate any material difference. Jason seems to argue that the breach of implied covenant claim (and its related request for emotional distress damages) is based on defendants' alleged misrepresentation of Haier-manufactured appliances as "GE" appliances. Again, those claims are contradicted by his allegation regarding Haier's permissible use of the name, and it is unclear how its ownership of GE Appliances would trigger liability for retailers like defendants. Nor are we persuaded by Jason's argument that his implied covenant claim somehow triggers defendants' liability for punitive damages. "[I]n noninsurance cases such as this one, breach of the implied covenant of good faith and fair dealing will not give rise to punitive damages." (*Spinks v. Equity Residential Briarwood Apartments* (2009) 171 Cal.App.4th 1004, 1054–1055.)

Second, defendants demurred to Jason's cause of action for failure to provide written estimate for repairs on the grounds that such an estimate could not be provided during the initial service call and no repairs had occurred. Section 9844 states: "An initial written estimate for the cost of repair shall be given to the customer before performing any repairs." The amended complaint alleged that no actual repairs were done on Jason's machine. Accordingly, there was no performance of repair to trigger any liability under section 9844.

Third, defendants demurred to Jason's claim for "respondeat superior" because respondeat superior is simply a theory of vicarious liability, not a cause of action. Again, we agree. To support this cause of action, the amended complaint merely alleges that Pardini is liable for the wrongful conduct of his employee Purcell. Such allegations "do not constitute a separate cause of action, but attach to the claim for recovery against the

20

employer under the theory of vicarious liability." (*CRST, Inc. v. Superior Court* (2017) 11 Cal.App.5th 1255, 1264.)

In sum, we affirm the trial court's decision sustaining defendants' demurrer to Jason's verified first amended complaint.

## DISPOSITION

The judgment is affirmed. Defendants are entitled to their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1)–(2).)

_____
Markman, J.*

We concur:

_____
Richman, Acting P.J.


_____
Miller, J.


*Jason v. Pardini et al.* (A165974)


    * Judge of the Alameda Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.